# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1961
_____

| | |
|---|---|
| In Re BankAmerica Corp. Securities Litigation (MDL No. 1264). | *     Petition for a Writ of Mandamus to *     the United States District Court for |
| Petition of Bank of America Corporation. | *     the Eastern District of Missouri. |

* Petition for a Writ of Mandamus to
* the United States District Court for
* the Eastern District of Missouri.
*
*

_____

Submitted: August 7, 2001

Filed: October 25, 2001
_____

Before LOKEN, HEANEY, and BYE, Circuit Judges.
_____

LOKEN, Circuit Judge.

On September 30, 1998, BankAmerica and NationsBank merged to form Bank of America Corporation (the "Bank"). Fifteen days later, the Bank disclosed a $372 million charge-off and the likelihood of substantial additional losses arising out of BankAmerica's $1.4 billion loan to hedge fund operator D.E. Shaw, Inc. ("Shaw"). Securities law class action suits were then filed and consolidated in the Eastern District of Missouri, and the district court denied (in large part) defendants' motions to dismiss. See In re BankAmerica Corp. Sec. Litig., 78 F. Supp. 2d 976 (E.D. Mo. 1999). During discovery, plaintiffs moved to compel production of eleven documents as to which defendants asserted the attorney-client privilege. The district court ordered the documents produced under the crime-fraud exception to the attorney-client privilege. The Bank petitioned this court for a writ of mandamus and moved

for an emergency stay of the district court's order. We granted a stay and now direct the district court to vacate and reconsider its disclosure order.

Though mandamus is an extraordinary remedy, we will issue the writ when the district court has committed a clear error of law or abuse of discretion in ordering the disclosure of privileged materials "[b]ecause maintenance of the attorney-client privilege up to its proper limits has substantial importance to the administration of justice, and because an appeal after disclosure of the privileged communication is an inadequate remedy." In re Bieter Co., 16 F.3d 929, 931-33 (8th Cir. 1994) (quotation omitted); see In re Gen. Motors Corp., 153 F.3d 714 (8th Cir. 1998) (granting writ when crime-fraud exception erroneously applied).

## I. The Crime-Fraud Exception.

The attorney-client privilege encourages full and frank communication between attorneys and their clients so that clients may obtain complete and accurate legal advice. But the privilege protecting attorney-client communications does not outweigh society's interest in full disclosure when legal advice is sought for the purpose of furthering the client's on-going or future wrongdoing. Thus, it is well established that the attorney-client privilege "does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." United States v. Zolin, 491 U.S. 554, 563 (1989) (quotation omitted).

In Zolin, the Supreme Court clarified the procedure that district courts should adopt in deciding motions to compel production of allegedly privileged documents under the crime-fraud exception. First, the Court resolved a conflict in the circuits by holding that the district court has discretion to conduct an *in camera* review of the allegedly privileged documents. Second, concerned that routine *in camera* review would encourage opponents of the privilege to engage in groundless fishing expeditions, the Court ruled that the discretion to review *in camera* may not be

exercised unless the party urging disclosure has made a threshold showing "of a factual basis adequate to support a good faith belief by a reasonable person" that the crime-fraud exception applies. Zolin, 491 U.S. at 572. Third, if the party seeking discovery has made that threshold showing, the discretionary decision whether to conduct *in camera* review should be made "in light of the facts and circumstances of the particular case," including the volume of materials in question, their relative importance to the case, and the likelihood that the crime-fraud exception will be found to apply. Id. at 572.

Prior to Zolin, it was settled in this circuit that a party seeking discovery of privileged communications based upon the crime-fraud exception must make a threshold showing "that the legal advice was obtained in furtherance of the fraudulent activity and was closely related to it." Pritchard-Keang Nam Corp. v. Jaworksi, 751 F.2d 277, 283 (8th Cir. 1984); see In re Grand Jury Subpoenas Duces Tecum, 798 F.2d 32, 34 (2d Cir. 1986). A moving party does not satisfy this threshold burden merely by alleging that a fraud occurred and asserting that disclosure of any privileged communications may help prove the fraud. There must be a specific showing that a particular document or communication was made in furtherance of the client's alleged crime or fraud. See Rabushka ex rel. United States v. Crane Co., 122 F.3d 559, 566 (8th Cir. 1997); United States v. Jacobs, 117 F.3d 82, 88 (2d Cir. 1997). Because the attorney-client privilege benefits the client, it is the client's intent to further a crime or fraud that must be shown. See, e.g., In re Richard Roe, Inc., 68 F.3d 38, 40 (2d Cir. 1995). Both the attorney's intent, and the attorney's knowledge or ignorance of the client's intent, are irrelevant. See In re Grand Jury Proceedings, 87 F.3d 377, 381 (9th Cir. 1996); cf. In re Grand Jury Subpoena Duces Tecum, 731 F.2d 1032, 1041 (2d Cir. 1984).[1]

---

[1]The attorney's intent may become relevant in cases where a party invokes the crime-fraud exception to discover documents protected by the attorney work product rule. See In re Grand Jury Subpoenas Duces Tecum, 773 F.2d 204, 207 (8th Cir. 1985). That issue is not before us.

## II. Plaintiffs' Threshold Showing.

In the underlying actions, plaintiffs allege that the Bank violated various federal securities laws when BankAmerica failed to disclose before the merger its full relationship with Shaw and the losses it was sustaining on its loans to Shaw. To support these claims, plaintiffs rely heavily on a September 15, 1998, press release which failed to disclose the Shaw losses; on Shaw's August and September 1998 profit and loss statements reflecting its losses; and on testimony by BankAmerica employees that they urged or recommended disclosure of BankAmerica's relationship with Shaw and the magnitude of Shaw's third quarter losses. According to the Bank's privileged document log, most or all of the eleven documents in question were created between August 28 and October 30, 1998, and contain or reflect attorney-client communications relevant to these disclosure issues. The documents themselves are not in the record before us.

Plaintiffs argue that the district court properly ordered disclosure of the eleven documents under the crime-fraud exception because "discovery in this case has established that the bank had extensive knowledge of the losses suffered prior to the shareholders' vote on the merger but that, acting in coordination with its attorneys, decided to delay recognition and public disclosure of the losses until after [] the merger closed." The Bank argues that plaintiffs have made no showing that it communicated with counsel in furtherance of an on-going fraud, as opposed to merely seeking legal advice as to its disclosure obligations under the federal securities laws.

## III. The District Court's Ruling.

After correctly stating the general principles underlying the crime-fraud exception, the district court granted plaintiffs' motion to compel discovery without examining the eleven documents *in camera*, based upon the following analysis:

The Court holds that the evidence submitted by the plaintiffs in their initial brief and reply brief in support of the motion to compel demonstrates the prima facie showing required under the crime/fraud exception. Specifically, plaintiffs demonstrate through testimony and the daily profit and loss statements that the defendants knew of the significant Shaw losses in August and September 1998. While the defendants' knowledge of the potential losses does not necessarily suggest fraudulent conduct, the Court finds that the plaintiffs' proffered evidence is sufficient to support discovery of the documents at issue. Each of the eleven documents sought could be construed as a "specific document providing legal advice [that] was made in furtherance of [the] alleged fraud and closely related to it." Rabushka, 122 F.3d at 565.

We conclude that the district court's analysis was an insufficient basis for invoking the crime-fraud exception for the following reasons:

1. The district court focused only on plaintiffs' threshold showing of fraud. The court then assumed, without any further showing by plaintiffs, that all contemporaneous attorney-client communications "could be construed" as in furtherance of the alleged fraud. This was error. See Rabushka, 122 F.3d at 566; Jacobs, 117 F.3d at 87-88; Pritchard-Keang, 751 F.2d at 282-83. As a result, the court failed to address specific issues such as whether documents authored after the September 15 press release, or the September 30 merger, necessarily fall outside the crime-fraud exception because they could only relate to prior wrongdoing.

2. The district court failed to relate plaintiffs' threshold showing to a cause of action requiring proof of the Bank's fraudulent intent. Plaintiffs' evidence tended to show that BankAmerica knew of Shaw's third quarter losses, considered whether to disclose those losses prior to the merger, and sought legal advice regarding its disclosure obligations. That is not enough to overcome the attorney-client privilege. The district court had previously ruled that some of plaintiffs' theories do not require proof of fraudulent intent, only negligent or unintentional but material non-disclosure

(those rulings are not before us). See BankAmerica, 78 F. Supp. 2d at 989, 991-92. "The attorney-client privilege is strongest where a client seeks counsel's advice to determine the legality of conduct before taking action." Jacobs, 117 F.3d at 88; see Upjohn Co. v. United States, 449 U.S. 383, 392 (1981). Therefore, the crime-fraud exception does not apply when a publicly held company seeks legal advice concerning its disclosure obligations and then commits an *unintentional* disclosure violation. To be sure, a client may seek legal advice in furtherance of intentional securities law fraud, and the crime-fraud exception will then apply. But it is not enough to show that an attorney's advice was sought before a decision was made not to disclose information that is alleged, as a matter of hindsight, to have been material. As the D.C. Circuit said in In re Sealed Case, 107 F.3d 46, 50 (D.C. Cir. 1997):

> Companies operating in today's complex legal and regulatory environments routinely seek legal advice about how to handle all sorts of matters . . . . There is nothing necessarily suspicious about the officers of this corporation getting such advice. . . . Showing temporal proximity between the communication and a crime is not enough.

3. The district court failed to conduct an *in camera* review of the eleven documents in question. In Zolin, the Supreme Court cautioned against routine use of the *in camera* review procedure but did not consider whether a district court should ever invoke the crime-fraud exception and order disclosure without conducting *in camera* review of the privileged materials. We have found no case in which this court affirmed an order to produce documents under the crime-fraud exception where the district court did not first review the documents *in camera*. See, e.g., In re Berkley & Co., 629 F.2d 548, 553 (8th Cir. 1980). In applying Zolin in General Motors, 153 F.3d at 716-17, we assumed that *in camera* review would precede a disclosure order, an assumption consistent with pre-Zolin law in many circuits. See In re Antitrust Grand Jury, 805 F.2d 155, 168 (6th Cir. 1986) (collecting cases).

Requiring a threshold showing of facts supporting the crime-fraud exception followed by *in camera* review of the privileged materials helps ensure that legitimate communications by corporations seeking legal advice as to their disclosure obligations under the federal securities laws are not deterred by the risk of compelled disclosure under the crime-fraud exception. Therefore, district courts should be highly reluctant to order disclosure without conducting an *in camera* review of allegedly privileged materials. In this case, given the above-described shortcomings of plaintiffs' threshold showing, the district court abused its discretion in ordering disclosure without *in camera* review of the eleven documents.

## IV. Conclusion.

For the foregoing reasons, we grant the Bank's petition for a writ of mandamus and vacate the district court's order of April 11, 2001. On remand, the district court is directed to determine, separately for each document, whether plaintiffs have made the threshold showing required in Zolin -- "a factual basis adequate to support a good faith belief by a reasonable person" that the Bank was engaged in intentional fraud and communicated with counsel in furtherance of the fraud. 491 U.S. at 572. Then, exercising the discretion described in Zolin, the court may review *in camera* any documents as to which the requisite threshold showing has been made to determine whether the crime-fraud exception applies.

A number of circuits have adopted somewhat different standards regarding the quantum of proof required to satisfy the crime-fraud exception, an issue the Supreme Court declined to reach in Zolin, 491 U.S. at 563 n.7. See In re Sealed Case, 107 F.3d at 50 (D.C. Cir.) (evidence that if believed by the trier of fact would establish the elements of an ongoing or imminent fraud); In re Grand Jury Proceedings, 87 F.3d at 381 (9th Cir.) (reasonable cause); In re Richard Roe, Inc., 68 F.3d at 40 (2d Cir.) (probable cause); In re Int'l Sys. & Controls Corp., 693 F.2d 1235, 1242 (5th Cir. 1982) (evidence that will suffice until contradicted and overcome by other evidence).

As in <u>General Motors</u>, we leave this question to the district court "recognizing that <u>Zolin</u> dictates a higher standard of proof for public disclosure than for in camera review." 153 F.3d at 716.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.