TRIPLE FIVE OF MINNESOTA, INC.,
a Minnesota corporation, Plaintiff,

v.

Melvin SIMON; Herbert Simon; Randolph Foxworthy; Melvin Simon & Associates, Inc., an Indiana corporation; Si–Minn Limited Partnership, an Indiana limited partnership; Si–Minn, Inc., an Indiana corporation; David Simon; Simon Property Group, Inc., a Delaware corporation; Simon Property Group L.P., a Delaware limited partnership; Ms Management Associates, Inc., an Indiana corporation; Simon Management Associates, Inc., an Indiana corporation; Mall of America Associates, a Minnesota general partnership; Moac Limited Partnership, a Minnesota limited partnership; Mall of America Company, a Minnesota general partnership; Minntertainment Associates, a Minnesota general partnership; Minntertainment Company, a Minnesota general partnership; Moac Mall Holdings LLC; Moa Land Holdings LLC; Moa Entertainment Company LLC; and Does 1 to 20, Defendants.

No. 99–CV–1894.

United States District Court,
D. Minnesota.

April 15, 2002.

Roger Magnuson, Esq., Mark Chasteen, Esq., and Brian Palmer, Esq., for Plaintiff.

Lawrence J. Field, Esq., and Thomas Fraser, Esq., for Defendants.

## ORDER

LEBEDOFF, Chief United States Magistrate Judge.

The above-entitled matter is before the undersigned Chief Magistrate Judge of District Court on Plaintiff's Motion to Compel Production of Documents Authored or Received by Defendant Randolph Foxworthy. Pursuant to an Order by this Court dated March 18, 2002, Defendants have submitted documents for an *in camera* review to determine whether the crime-fraud exception to the attorney-client privilege and work product doctrine applies. The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. INTRODUCTION

This dispute arose from a transaction in October 1999 in which the Teachers Insurance and Annuity Association ("Teachers") sold 50% of its interest in the Mall of America to Defendant Simon Property Group, Inc. During discovery, Defendants withheld from production sixty-two documents and redacted twenty-four documents,[1] which were either authored or received by Defendant Randolph Foxworthy, based on attorney-client privilege and the work product doctrine. Foxworthy is an in-house lawyer for several of the Defendant companies including Simon Property Group, Inc.; Melvin Simon & Associates, Inc.; and Si–Minn, Inc. In this Court's March 18, 2002 Order, the Court initially found that Defendants properly withheld privileged documents containing communications in which Foxworthy was acting as counsel to the above-named companies. Howev-

---

**1.** Plaintiff challenges only twenty of the twenty-four redacted documents.

er, the Court then found that Plaintiff made a sufficient factual showing that a reasonable person could believe in good faith that an *in camera* review could reveal evidence establishing that the crime-fraud exception to the attorney-client privilege and work product doctrine applies in this case,[2] in accordance with *United States v. Zolin,* 491 U.S. 554, 572, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989). As required by *In re BankAmerica Corp. Sec. Litig.,* 270 F.3d 639, 643 (8th Cir.2001), the Court related the factual showing to a specific cause of action, which in this case, was Plaintiff's RICO claim. Next, the Court exercised its discretion and decided to review the privileged documents for the sole purpose of determining whether the crime-fraud exception applies. Defendants were therefore ordered to produce the documents to the Court for an *in camera* review.

## II. DISCUSSION

The attorney-client privilege "does not outweigh society's interest in full disclosure when legal advice is sought for the purpose of furthering the client's on-going or future wrongdoing." *In re BankAmerica,* 270 F.3d at 641. Thus, the privilege "does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." *Zolin,* 491 U.S. at 563, 109 S.Ct. 2619. Timing is critical. The client must have been "engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme." *Pritchard–Keang Nam Corp. v. Jaworski,* 751 F.2d 277, 281 (8th Cir.1984) (citing *In re Murphy,* 560 F.2d 326, 338 (8th Cir.1977)).

Moreover, the legal advice must have been obtained to further the fraudulent activity; it is not enough that a communication merely provides evidence of the fraud. *See In re BankAmerica,* 270 F.3d at 642; *Pritchard–Keang Nam Corp.,* 751 F.2d at 283 ("That the report may help *prove* that a fraud occurred does not mean that it was

*used* in perpetrating the fraud.") (emphasis in original); *In re Richard Roe, Inc.,* 68 F.3d 38, 40 (2d Cir.1995) ("If it did, the privilege would be virtually worthless because a client could not freely give, or an attorney request, evidence that might support a finding of culpability. Instead, the exception applies only when the court determines that the client communication or attorney work product in question was *itself* in furtherance of the crime or fraud.") (emphasis in original).

*Zolin* contemplated a two-part procedure to establish the applicability of the crime-fraud exception. *See* 491 U.S. at 564, 570, 109 S.Ct. 2619 (requiring the proponent of the exception to make a "threshold showing" before a court may conduct an *in camera* review and an "ultimate showing" that the exception applies). The threshold test determines whether a court may exercise its discretion to conduct an *in camera* review and requires the proponent of the exception to show that a reasonable person could believe in good faith that an *in camera* review could reveal evidence establishing that the crime-fraud exception applies. *See id.* at 564, 572, 109 S.Ct. 2619. Here, the Court has already determined that a reasonable person could believe in good faith that an *in camera* review could reveal evidence establishing the application of the exception.

Now, in this proceeding, Plaintiff must make the ultimate showing that the crime-fraud exception actually applies and that the privilege should be overcome. *See id.* at 564, 568, 109 S.Ct. 2619. The Court may consider the content of the privileged documents in this analysis. *See id.* at 568–70, 109 S.Ct. 2619.

### A. *The Test and Quantum of Proof Required to Establish that the Crime–Fraud Exception Applies*

To make the ultimate showing that the crime-fraud exception applies, the propo-

---

**2.** Contrary to Defendants' assertion in its supplemental memorandum, Plaintiff was not obligated to rely on privileged documents as its threshold showing. *See United States v. Zolin,* 491 U.S. 554, 574–75, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) (holding that when a party contends the

crime-fraud exception applies, "the threshold showing to obtain *in camera* review may be met by using any relevant evidence, lawfully obtained, that has *not* been adjudicated to be privileged") (emphasis added).

nent of the exception must satisfy a two-part test:

First, there must be a prima facie showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice. Second, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it.

*E.g., In re Grand Jury Investigation,* 842 F.2d 1223, 1226 (11th Cir.1987) (citations omitted).

Neither the United States Supreme Court nor the Eighth Circuit has specified the quantum of proof required to establish the prima facie showing. *See Zolin,* 491 U.S. at 563, 109 S.Ct. 2619; *In re Gen. Motors Corp.,* 153 F.3d 714, 716 (8th Cir.1998) (stating "we leave this question to the district court, recognizing that *Zolin* dictates a higher standard of proof for public disclosure than for *in camera* review."). Other courts have adopted various standards. *See In re Grand Jury Proceedings,* 87 F.3d 377, 381 (9th Cir. 1996) (reasonable cause to believe attorney was used in furtherance of ongoing scheme); *Haines v. Liggett Group, Inc.,* 975 F.2d 81, 95–96 (3d Cir.1992) ("evidence which, if believed by the fact-finder, would be sufficient to support a finding that the elements of the crime-fraud exception were met."); *In re Grand Jury Investigation,* 842 F.2d at 1226 ("evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed.") (citations omitted); *In re Antitrust Litig.,* 805 F.2d 155, 166 (6th Cir.1986) (sufficient facts for "a prudent person [to] have a reasonable basis to suspect the perpetration of a crime or fraud.") (quotation omitted); *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983,* 731 F.2d 1032, 1039 (2d Cir.1984) ("probable cause to believe that a crime or fraud had been committed and that the communications were in furtherance thereof") (citation omitted); *In re Int'l Sys. & Controls Corp. Sec. Litig.,* 693 F.2d 1235,

1242 (5th Cir.1982) (evidence which will suffice until contradicted and overcome by other evidence); *In re Sealed Case,* 676 F.2d 793, 815 (D.C.Cir.1982) ("evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed" when the document was prepared).

■ The tests enunciated by the Third, Eleventh, and D.C. Circuits are comparable, *see In re Grand Jury Proceedings,* 183 F.3d 71, 78 n. 6 (1st Cir.1999), and the Court will employ such a standard in this case. Thus, in order for the crime-fraud exception to apply in this case, Plaintiff must show (1) evidence that, if believed by a trier of fact, would establish that fraud was ongoing or planned at the time the documents were created, and (2) the communications were made in furtherance thereof.

### B. *The Applicable Fraud*

Count 11 of the Complaint is a claim for fraudulent inducement of a 1996 settlement agreement. Notably, Plaintiff does not plead any other claim for fraud. Although Plaintiff's threshold showing did not pertain to fraudulent inducement, the Court will nevertheless consider whether the exception applies to privileged documents arguably related to fraudulent inducement. In Count 12, Plaintiff alleges that Defendants Melvin Simon, Herbert Simon, David Simon, and Randolph Foxworthy violated the RICO Act. This claim requires Plaintiff to show a pattern of racketeering activity such as the commission of at least two predicate acts, which include mail fraud and wire fraud. Plaintiff does assert that the above-named Defendants committed acts of mail fraud and wire fraud.

Plaintiff does not assert in its motion papers that Defendants committed any other fraud. Accordingly, the Court's *in camera* review is limited to whether the privileged communications were made in furtherance of these specific types of fraud: fraudulent inducement of settlement agreement, mail fraud, and wire fraud.

■ In applying the two-part test enunciated above, the Court will remain

mindful of the elements of the respective types of fraud at issue. A claim of fraudulent inducement of settlement agreement requires the plaintiff to show the following: (1) a misrepresentation of material fact by the defendant, (2) the defendant knew the statement was false at the time or made the assertion without regard to its falsity, (3) the defendant intended the plaintiff to act, (4) the plaintiff reasonably relied on the statement, (5) the plaintiff acted to his detriment, and (6) the plaintiff incurred actual damages. *See Cohen v. Appert,* 463 N.W.2d 787, 789 (Minn.App.1990), *review denied,* Jan. 24, 1991. Plaintiff bases its allegations of mail fraud on 18 U.S.C. § 1341, which requires three elements: (1) a scheme to defraud, (2) use of the mail to execute or attempt to execute the scheme, and (3) intent to cause harm. *See Carter v. United States,* 530 U.S. 255, 261, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000); *United States v. Lefkowitz,* 125 F.3d 608, 614 (8th Cir.1997) (citations omitted). Plaintiff bases its allegations of wire fraud on 18 U.S.C. § 1343, which requires similar elements: (1) a scheme to defraud, (2) use of interstate wires to execute or attempt to execute the scheme, and (3) intent to cause harm. *See Lefkowitz,* 125 F.3d at 614.

Plaintiff cites *In re Berkley,* 629 F.2d 548 (8th Cir.1980) for the proposition that the crime or fraud furthered by the communication need not be the one at issue before the Court. In *In re Berkley,* the fraud at issue in the case was United States customs fraud, but the communications revealed evidence of fraudulent misrepresentations to a foreign government. *See* 629 F.2d at 554. The proponent of the exception identified and defined the relevant legal bases: customs fraud and fraudulent misrepresentation. Here, on the other hand, Plaintiff has provided the Court with only three well-defined legal bases: fraudulent inducement, mail fraud, and wire fraud. Unlike the party requesting disclosure in *In re Berkley,* Plaintiff does not attempt to establish that Defendants engaged in any other specific crime or fraud.

### C. *Whether the Crime–Fraud Exception Applies*

■ The Court has considered the non-privileged evidentiary submissions and the *in camera* memoranda of the parties, as well as the privileged documents, and the Court finds that Plaintiff has not met its burden to establish the exception's applicability. A detailed discussion of the reasons for this determination would require the Court to describe the contents of the documents. Such a discussion would be inappropriate in that it would compromise the privileged and protected nature of the documents. However, the Court will briefly address the non-privileged evidence provided to the Court by Plaintiff[3] and refer generally to the privileged documents.

### 1. *Mail Fraud*

The only two pieces of Plaintiff's evidence related to mail fraud were two letters attached as deposition exhibits. Deposition Exhibit 64 is a May 1999 letter from Foxworthy to Plaintiff. (Chasteen Aff. Ex. D.) In the letter, Foxworthy assured Plaintiff that the Mall of America Associates ("MOAA"), in which Plaintiff was a partner with Si–Minn Developers, LP ("Si–Minn"), was monitoring the negotiations with Teachers to insure that MOAA's economic interests were protected. A similar letter was sent by Si–Minn to Teachers in March 1998, which stated, "We are sure you appreciate that our partner, Triple Five, also has direct interests in the same issues and their position may well be different than either yours or ours. We do not have absolute control over the decisions relating to any disposition by you and, therefore, Triple Five will be a player in the ultimate outcome." (Chasteen Aff. Ex. F.)

The Court finds that these letters, standing alone or considered in conjunction with the privileged documents, do not constitute

---

3. The evidence from Plaintiff consisted of the following exhibits submitted with the original motion to compel: a printout of an Internet web page for Simon Property Group; excerpts from the deposition of Defendant Randolph Foxworthy and exhibits; excerpts from the deposition of Defendant Herbert Simon and an exhibit; excerpts from the deposition of Defendant Melvin Simon and exhibits; excerpts from the deposition of Defendant David Simon; and excerpts from the deposition of Shawn Shamsian and an exhibit. (Chasteen Aff. Exs. C–H.)

evidence that, if believed by a trier of fact, would establish a scheme to defraud at the time the documents were created. In addressing Defendants' motion to dismiss, the District Court found that the March 1998 letter "could amount to [mail] fraud *if* the promisor had no intention to perform at the time the promise was made." (Order of August 2, 2000) (citing *Vandeputte v. Soderholm*, 298 Minn. 505, 216 N.W.2d 144, 147 (1974)) (emphasis added). The District Court was obligated to accept Plaintiff's allegations as true, but Plaintiff is required at this stage to provide more. Fatal to Plaintiff in this proceeding is a lack of evidence that Si–Minn had no intention to perform at the time the promise was made.

Interestingly, Plaintiff's evidence includes deposition testimony from Shawn Shamsian of Triple Five, which shows that Foxworthy, acting as counsel to Si–Minn, was concerned about and made Plaintiff aware of a buy/sell provision that he thought could disadvantage MOAA in the Teachers sale. (Chasteen Aff. Ex. H at 61–63.) Not only did Shamsian disagree with Foxworthy's concern, but his testimony actually shows an intention by Si–Minn to protect Plaintiff's interests.

Likewise, an *in camera* review of the privileged documents did not reveal the requisite amount of evidence of a scheme to defraud, intent to cause harm, or lack of intention by Defendants to perform. In addition, it is not evident that the purpose of the documents was to further fraud. Finally, many of the documents were interoffice memoranda, drafts, or handwritten notes and therefore would not qualify as evidence of mail fraud.

### 2. *Wire Fraud*

Some of the privileged documents are copies of e-mails. However, the documents do not reveal evidence that, if believed by a trier of fact, would establish fraud. In particular, there is insufficient evidence that Defendants intended to defraud Plaintiff or cause it harm. There is also a lack of requisite evidence that the objective of the documents was to further fraud.

### 3. *Fraudulent Inducement*

As to Plaintiff's claim of fraudulent inducement, the May 1999 and March 1998 letters postdate the 1996 settlement agreement by several years and do not constitute evidence of future or ongoing fraud. With respect to the privileged documents, the *in camera* review did not reveal evidence that, if believed by a trier of fact, would establish the elements of fraudulent inducement.

### III. CONCLUSION

The Court expresses no opinion as to whether any of the Defendants committed mail fraud, wire fraud, or fraudulent inducement. The Court simply finds that in this proceeding, Plaintiff has not met its burden to establish the applicability of the crime-fraud exception to the privileged documents.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants are not required to produce privileged documents authored or received by Defendant Randolph Foxworthy. After reviewing the documents *in camera*, the Court has found that the crime-fraud exception to the attorney-client privilege and work product doctrine does not apply in this case.