RAMIREZ, J.
Petitioners Butler, Pappas, Weihmuller, Katz, Craig, LLP, attorney John J. Pappas (“Butler Firm”), and Certain Interested Underwriters at Lloyd’s, London (“Lloyd’s”) seek to quash an order compelling the discovery of certain documents alleged to be covered by the attorney-client privilege. We grant the petition because the conduct of the insurer did not amount to insurance fraud upon the insured under the circumstances of this case.
Respondent Coral Reef of Key Biseayne Developers, Inc. owns a rental apartment building in Key Biseayne, Florida and Lloyd’s is Coral Reefs property insurer. In the fall of 1999, Coral Reef and its principal, Homero Meruelo, Jr., who had a prior conviction for insurance fraud, submitted two claims of loss to Lloyd’s in the sum of $1.45 million. The claims represented the cost to repair property damage caused by hidden decay and collapse. Coral Reef retained Frank Inguanzo of EPIC Group as its public adjuster and based the amount of its claim on a $1.45 million estimate from contractor Andre Fuxa of Star Restoration, Inc.
Lloyd’s retained Concorde Adjusting, Inc. and its principal, Jon Stettin, as its independent adjuster. Stettin estimated Coral Reefs covered damages at approximately $500,000.00. Lloyd’s settled the claim in December of 1999 for $551,021.80 and paid Coral Reef $440,817.44, but held back $110,204.36 pending the commencement of repair work to the property. In September of 2000, Coral Reef sued Lloyd’s seeking to recover the held back amount. Lloyd’s retained the Butler Firm to represent it.
In May of 2000, prior to the commencement of repair work to the property, Mer-uelo, Jr. submitted on Coral Reefs behalf three additional claims of loss for the sum of $4.76 million. Coral Reef based the amount of this claim on an estimate from Coastal Insurance Repair, Inc., an agency under the investigation of the Department of Insurance for improper inflation of insurance claims. Lloyd’s subsequently re *341 quested additional information from Coral Reef in order to reach a decision upon the claims and asked to conduct an examination under oath.
On January 11, 2001, Lloyd’s denied Coral Reefs claim through Stettin. Lloyd’s relied upon Coral Reefs breach of four insurance contract provisions, including failure to cooperate, failure to produce books and records, failure to submit to an examination under oath, and intentional misrepresentation and concealment of material facts. Lloyd’s also stated that Coral Reef filed suit prior to having fulfilled its contractual obligations and that Coral Reef “attempted to commit insurance fraud.”
In May of 2001, Coral Reef sued Lloyd’s for breach of contract and declaratory judgment on the $4.76 million insurance claim. Coral Reef later amended its complaint and included a defamation count against Lloyd’s, Concorde Adjusting, and Stettin. The Butler Firm, who represented all of the defendants, had the case removed to federal court who later remanded the case back to state court for further proceedings.
In response to Coral Reefs discovery requests, Lloyd’s and Concorde filed objections and privilege logs arguing that Coral Reefs requests included documents covered by attorney-client privilege. Coral Reef moved to compel production contending that the documents addressed the truth and motive for the statements in the denial letter and went to the heart of the defamation claims and that the privileged communications would help determine the factual basis for the defamatory statements in the January 11, 2001 denial letter.
On October 9, 2002, the trial court ordered an initial hearing to determine whether the crime-fraud exception applied to the attorney-client privilege. The trial court also requested that the parties address what evidence Coral Reef relied upon to' demonstrate a prima facie case, the admissibility of that evidence, and the crime-fraud which would support application of the exception, with particular attention paid to sections 817.234(7) and 817.234(l)(a)3.a., Florida Statutes, relating to false and fraudulent insurance claims.
At the November 26, 2002 hearing on whether the crime-fraud exception applied, the trial court found that Coral Reef established a prima facie case to conduct an evidentiary hearing to determine whether a crime or fraud was committed and hence applied to the attorney-client privilege, under section 90.502(4), Florida Statutes. In support of Coral Reefs prima facie case that the crime-fraud exception applied, the trial court only considered an affidavit from Inguanzo filed on July 4, 2001.
An extensive evidentiary hearing followed. On June 23, 2003, the trial court issued its order and concluded that the attorney-client privilege had been waived.
The Crime-Fraud Exception
The attorney-client privilege is widely recognized and applies to all confidential communications between a client and its attorney “made in the rendition of legal services,” unless the communication falls within a statutory exception to the privilege. See § 90.502(2), Fla. Stat. (2003). See also Haskell Co. v. Georgia Pac. Corp., 684 So.2d 297, 298 (Fla. 5th DCA 1996)(holding that confidential communications are not subject to disclosure, unless one of the statutory exceptions to the privilege applies).
Under section 90.502(4)(a), Florida Statutes (2003), there is no attorney-client privilege, as provided for in section 90.502(2), when “[t]he services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew was a crime or *342 fraud.” See First Union Nat’l Bank v. Turney, 824 So.2d 172, 186-187 (Fla. 1st DCA 2001). This crime-fraud exception thus effectively eliminates the privileged character of an attorney-client communication if the client communicates with the attorney in order to obtain advice or assistance to perpetuate what the client knows to be a crime or fraud. Id.
Application of the Crime-Fraud Exception
The trial court determines whether an attorney-client communication falls within any of the statutory exceptions to the privilege. See American Tobacco Co. v. State, 697 So.2d 1249, 1253 (Fla. 4th DCA 1997). First, the party that seeks disclosure of the privileged communications must allege that the communication was made as .part of an effort to perpetrate a crime or fraud, and the party must also specify the crime or fraud. See Florida Mining & Materials Corp. v. Continental Cas. Co., 556 So.2d 518, 519 (Fla. 2d DCA 1990)(holding that the party seeking discovery of the privileged communication must allege that the client “affirmatively sought the advise of counsel to procure a fraud” before the application of the statutory crime-fraud exception).
Second, the party that seeks disclosure must establish a prima facie case that the party asserting the attorney-client privilege sought the attorney’s advice in order to commit, or in an attempt to commit, a crime or fraud. See Florida Mining, 556 So.2d at 519; First Union Nat’l Bank v. Whitener, 715 So.2d 979, 982 (Fla. 5th DCA 1998)(stating that “[t]he party seeking to invoke the fraud exception must present prima facie evidence that the client sought the advice of counsel to procure a fraud.”).
Under section 817.234(l)(a), Florida Statutes (2003), a person commits insurance fraud when that person, “with the intent to injure, defraud, or deceive any insurer,” does the following:
1. Presents or causes to be presented any written or oral statement as part of, or in support of, a claim for payment or other benefit pursuant to an insurance policy or a health maintenance organization subscriber or provider contract, knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such claim.
Subsection (7) also provides:
The provisions of this section shall also apply as to any insurer or adjusting firm or its agents or representatives who, with intent, injure, defraud, or deceive any claimant with regard to any claim. The claimant shall have the right to recover the damages provided in this section.
The trial court may review attorney-client communications in camera to determine the applicability of the crime-fraud exception, and its decision to conduct such a review lies entirely within its sound discretion. See United States v. Zolin, 491 U.S. 554, 572, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989). This determination is dependent upon whether the client’s communication was made in furtherance of a crime or fraud. See Triple Five of Minn., Inc. v. Simon, 213 F.R.D. 324, 326 (D.Minn.2002).
If the trial court determines that the crime-fraud exception applies, the client is entitled to provide a reasonable explanation for the communication or its conduct at an evidentiary hearing, see Turney, 824 So.2d at 183 and Eight Hundred, Inc. v. Florida Dept. of Rev., 837 So.2d 574, 576 (Fla. 1st DCA 2003), at which the client carries the burden of persuasion to give a reasonable explanation for its communication or conduct. See American Tobacco, 697 So.2d at 1256.
*343 The Prima Facie Case
Coral Reef in this case must have alleged that the communications between Lloyd’s and the Butler Firm were made as part of Lloyd’s effort to perpetrate what they knew to be a crime or fraud as defined in sections 817.234(l)(a) or 817.234(7), Florida Statutes (2003). Coral Reefs argument is that Lloyd’s accused Coral Reef of fraud with the intent to injure, defraud, or deceive Coral Reef with regard to its claim. Coral Reef had the burden to produce prima facie evidence sufficient for the trier of fact to determine the applicability of the crime-fraud exception. Lloyd’s in turn carried the burden of persuasion to give a reasonable explanation for its conduct or communication.
We do not find that Coral Reef made its threshold showing through the production of prima facie evidence of the existence of an underlying crime or fraud. We instead conclude that Lloyd’s did not commit insurance fraud through the inclusion of the sentence in its denial letter that Coral Reef had “attempted to commit insurance fraud;” and the denial letter did not contain false, incomplete, or misleading information and was not intended to injure, defraud, or deceive Coral Reef. Lloyd’s had a reasonable basis to believe that Coral Reef had attempted to commit insurance fraud at the time in which it issued the denial letter.
First, Lloyd’s believed that the second claim of loss was grossly inflated. The claim was more than triple the initial claim of loss. Although, as Coral Reef argues, Lloyd’s admitted that the first claim was a covered claim and Lloyd’s expected to receive a supplemental claim, the second claim nonetheless created a highly suspect disparity between the first and second claim of loss that could not' readily be dismissed as a valuation difference. The second claim was also vastly disproportionate to the original settlement amount. Second, Lloyd’s understood that Coral Reef had not undertaken any repairs to the property prior to its submission of the second claim of loss, which could have justified the increase in the claim. Third, Lloyd’s knew that Meruelo, Jr., the individual who signed the second claim of loss, had previously been convicted of property insurance fraud. Meruelo, Jr.’s disassociation as an officer of Coral Reef and Lloyd’s knowledge of his fraud conviction prior to its issuance of any payment to Coral Reef does not at all undermine Lloyd’s suspicion that Coral Reef was nonetheless attempting to defraud them.
Finally, Lloyd’s knew that Coastal Insurance Repair, Inc., the company which prepared the estimate that Coral Reef had relied on to submit the second claim of loss, was under investigation by the Department of Insurance for improper inflation of insurance estimates. Coral Reef argues that this investigation was not at all linked to Coral Reef and there was no evidence that suggested that the investigation had any relation to the relevant claim of loss. The dispositive question is whether the investigation, coupled with Meruelo, Jr.’s prior fraud conviction, other reasons notwithstanding, gave rise to a legitimate reasonable belief of fraud on the part of Coral Reef.
These reasons were sufficient to support Lloyd’s reasonable belief that Coral Reef had attempted to commit insurance fraud. The trial court thus departed from the essential requirements of the law and consequently misapplied the crime-fraud exception to Lloyd’s privileged communications.
We therefore reverse the order in which the trial court concluded that Lloyd’s had waived the attorney-client privilege under the crime-fraud exception. We decline to *344 address the remaining issues in the petition.
Reversed.