In re GRAND JURY PROCEEDINGS, John Doe No. N–92–86, Grand Jury No. 95–1.

UNITED STATES of America, Plaintiff–Appellee,

v.

UNDER SEAL, Defendant–Appellant.

No. 96–4609.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 23, 1996.

Decided Dec. 23, 1996.

ARGUED: Conrad Moss Shumadine, Willcox & Savage, P.C., Norfolk, VA, for Appellant. James Ashford Metcalfe, Assistant United States Attorney/Senior Litigation Counsel, Norfolk, VA, for Appellee. ON BRIEF: Jeffrey H. Gray, Michael C. Davis, T. Scott McGraw, Willcox & Savage, P.C., Norfolk, VA, for Appellant. Helen F. Fahey, United States Attorney, William L. Finch, Trial Attorney, Fraud Section, United States Department of Justice, Norfolk, VA, for Appellee.

Before MURNAGHAN and LUTTIG, Circuit Judges, and HALLANAN, United States District Judge for the Southern District of West Virginia, sitting by designation.

Affirmed by published opinion. Judge MURNAGHAN wrote the opinion, in which Judge LUTTIG and Judge HALLANAN joined.

## OPINION

MURNAGHAN, Circuit Judge:

In reviewing the propriety of loans made by the Appellant–Bank to a customer of the Bank, the Federal Deposit Insurance Corporation ("FDIC") concluded that a series of loans made to that customer, his wife, and an acquaintance of the customer were in fact nominee loans made for the benefit of the customer. As such, the FDIC contended that the loans made to the customer's wife and the acquaintance should be combined with the loans made to the customer so as to create a civil violation of the Virginia lending limit statute, Va.Code Ann. § 6.1–61 (Michie 1996). In response, the Bank sought to quash grand jury subpoenas served on its attorneys, who represented the Bank with respect to the loans, and a non-attorney employee. After conducting an *in camera* hearing on July 24, 1996, the district court concluded that the government had made a sufficient showing of a prima facie case of crime or fraud to vitiate both the attorney-client and work-product privileges. Additionally, the district court concluded that neither the attorney-client nor the work-product privileges applied to documents created by the non-attorney employee. The Bank now challenges both rulings on appeal.

## I.

The evidence presented to the district court in the *in camera* hearing tends to prove that the Bank participated in loan procedures whereby a customer borrowed $350,000 from the Bank on November 21, 1990, the result of which was to place the customer $91,950 over the Virginia lending limit permitted to one customer considering the existing loans made to that customer. In an apparent effort to conceal the lending limit violation, nearly a week after the $350,000 loan was made to the customer, the Bank lent the customer's wife $350,000, and had her sign a note, back-dated to the day of the loan to her husband. The wife's note effectively cancelled out her husband's November 21, 1990 note. These series of machinations by the Bank served to further the concealment of the Bank's exceeding of the lending limit to the customer.

Ultimately, the Bank wrote off as losses about $1,867,000 in loans to both the customer and his wife. Thereafter, lawyers representing the Bank, with no criminal or fraudulent intentions, performed on behalf of the Bank certain acts which served to misrepresent or to conceal what the Bank had, in fact, done. One lawyer suing to collect the loans involved asserted that the wife's loan was

executed November 21, 1990, the date of the husband's loan, while the note actually was signed by the wife on November 27, 1990, and back-dated to November 21, 1990. Another lawyer, in the wife's bankruptcy proceeding, alleged that the wife executed a note in the amount of $350,000 on November 21, 1990. A third lawyer wrote a letter to a state agency having regulatory oversight over the Bank contending that the loan to the wife was a nominee loan to the husband. (On that assertedly incorrect assumption, the state agency held that the nominee status would not make the wife's loan illegal.) Finally, a question arose as to whether two lawyers, again at the request of the Bank, and acting innocently, gave somewhat false information which might serve to cover up the Bank's crime or fraud activity.[1] As a result, the grand jury sought testimony from the attorneys as to what information was told to them by their client, the Bank, with respect to the date of the wife's note. The grand jury also sought documents from the attorneys, as well as, the non-attorney employee.

In response to the grand jury's subpoenas, the Bank asserted the attorney-client privilege and the work-product privilege, on the part of the lawyers involved in performing, unknowingly, acts in furtherance of the Bank's alleged crime or fraud. Furthermore, the Bank also resorted to the work product privilege with respect to testimony from the non-attorney employee about his investigation on the Bank's behalf. The investigation concerned FDIC inquiries of several Bank activities such as the back-dated note and the excess loan to the customer, which here concern us. The district court concluded that the government had established a prima facie case of crime-fraud sufficient to override both the attorney-client and work-product privileges.

## II.

Although the initial grand jury has now retired, another grand jury has been empan-

eled to hear the matter. In view of the replacement of the retired grand jury by a new grand jury, the instant matter is not moot. *In re Grand Jury Proceedings,* 33 F.3d 342, 347 (4th Cir.1994).

### A. *Attorney-Client and Work–Product Privileges*

■ No doubt exists that, under normal circumstances, an attorney's advice provided to a client, and the communications between attorney and client are protected by the attorney-client privilege. *Upjohn v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981); *United States v. Nobles,* 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975); *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The work-product privilege protects the work done by an attorney in anticipation of litigation. *In re Grand Jury Proceedings,* 33 F.3d at 348. With respect to the work-product privilege, courts have analyzed the privilege in two contexts—fact work-product and opinion work-product. *Id.* Fact work-product may be obtained "upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *Id.* citing *In re John Doe,* 662 F.2d 1073, 1080 (4th Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982). Opinion work-product, however, can be raised by both the client and the attorney and is "more scrupulously protected as it represents the actual thoughts and impressions of the attorney." *In re Grand Jury Proceedings,* 33 F.3d at 348, citing *In re John Doe,* 662 F.2d at 1079–1080. In the instant case, the government does not seek opinion work-product, only fact work-product. The grand jury seeks only transaction of the factual events involved.

■ The attorney-client and work-product privileges are lost, however, when a client gives information to the attorneys for the purpose of committing or furthering a crime

---

1. The question being considered only at a prima facie stage concerning what evidence may be obtained and offered, our assumption here and elsewhere that lawyers were acting innocently need not preclude a contrary finding at a subsequent stage of the proceeding if further evidence is introduced so indicating.

or fraud. *In re Grand Jury Subpoena*, 884 F.2d 124, 127 (4th Cir.1989).

■ While the Fourth Circuit has not explicitly addressed the interplay between the attorney's lack of knowledge of the client's criminal or fraudulent activities, and the successful assertion of the attorney-client privilege by the client,[2] other circuits have addressed the issue. Most recently, the Ninth Circuit, in *In re Grand Jury Proceedings*, 87 F.3d 377 (9th Cir.1996), *cert. denied sub nom. Corporation v. U.S.*, — U.S. —, ——, 117 S.Ct. 333, 136 L.Ed.2d 246 (1996), stated that "for the crime-fraud exception to apply, 'the attorney need not himself be aware of the illegality involved; it is enough that the communication furthered, or was intended by the client to further, that illegality.'" *Id.* at 381. Moreover, the Ninth Circuit emphasized that:

> Inasmuch as today's attorney-client privilege exists for the benefit of the client, not the attorney, it is the client's knowledge and intentions that are of paramount concern to the application of the crime-fraud exception; the attorney need know nothing about the client's ongoing or planned illicit activity for the exception to apply. It is therefore, irrelevant, for purposes of determining whether the communications were made "in furtherance of" Corporation's criminal activity, that Roe and Doe [attorneys] may have been in the dark about the details of that activity.

*Id.* at 381–82 (internal footnote omitted). Moreover, in *In re Sealed Case*, 676 F.2d 793 (D.C.Cir.1982), the court upheld a federal grand jury subpoena with respect to two items sought from the client's in-house attorney. In doing so, the court noted that

> [i]n some circumstances the attorney may be innocently involved in the client's crime or fraud. But a guilty client may not use the innocence or ignorance of his attorney to claim the court's protection against a grand jury subpoena. Unless the blameless attorney is before the court with an independent claim of privilege, the client's

use of an attorney's efforts in furtherance of crime or fraud negates the privilege. *Id.* at 812. *See also In re Grand Jury Proceedings*, 680 F.2d 1026, 1028 (5th Cir. 1982) (citing *United States v. Friedman*, 445 F.2d 1076, 1086 (9th Cir.1971)) ("[t]he crime or fraud exception applies even where the attorney is completely unaware that his advice is sought in furtherance of an improper purpose.") Thus, based on the foregoing persuasive authorities, the concealment or cover-up of its criminal or fraudulent activities by the client, the holder of the privilege, *see In re Grand Jury Proceedings*, 33 F.3d at 348, rather than the attorney's lack of knowledge of the criminal or fraudulent activity or activities of the client, controls the court's analysis of whether the attorney-client privilege may be successfully invoked. Similarly, the crime-fraud exception applies in the work-product context. *Id.* We now address the applicability of the privileges to the facts of the instant case.

### B. *Bank's Attorneys*

The Bank claims that the attorney-client and work-privileges protect its attorneys from testifying before the grand jury or producing any documents with respect to the Bank. Furthermore, even if the loans with respect to the customer were improper or illegal, a point the Bank does not concede, the Bank maintains that the privileges should still remain intact because the attorneys knew nothing about the Bank's alleged criminal or fraudulent activity.

■ We review the district court's determination that the government made a prima facie showing of the Bank's crime or fraud for abuse of discretion. *In re Grand Jury Proceedings*, 33 F.3d 342, 349 (4th Cir.1994). The district court's determination that the crime-fraud exception overrides the fact work-product privilege is reviewed *de novo*. *Id.* at 353.

■■ The court is satisfied that the district court's finding of a prima facie case of

---

2. In *X Corp. v. Doe*, 805 F.Supp. 1298 (E.D.Va. 1992), *aff'd without op.*, 17 F.3d 1435 (4th Cir. 1994), the district court stated that "[m]oreover, the crime-fraud exception applies without regard to the attorney's actual or constructive knowledge of the crime or fraud." 805 F.Supp. at 1306.

crime-fraud is adequately established by the record. Here, each of the attorneys, unknowingly, furthered the Bank's alleged fraud by referencing in various documents the November 21, 1990 loan[3] to the customer's wife. Thus, the Bank was able to "legitimize" the wife's 1990 loan, as made on a date six days earlier than when actually made, by using its attorneys to file pleadings, documents, and to write letters referencing the November 21, 1990 note. Consequently, the attorneys, albeit unknowingly, furthered the Bank's fraud. As stated previously, the attorney's knowledge of the client's fraud does not control whether the crime-fraud exception vitiates the attorney-client privilege; rather, the client's use of the attorney to further the criminal or fraudulent activities determines the applicability of the crime-fraud exception to the attorney-client privilege. The government's prima facie showing of crime-fraud also overrides the work-product privilege. Accordingly, the district court properly concluded that neither the attorney-client nor work-product privileges were available to the Bank.

### C.  Bank's Non–Attorney Employee

■ The non-attorney employee's assertion of a work-product privilege for documents prepared during the course of the employee's investigation on behalf of the Bank, fares no better. Here, the Bank hired a consultant,[4] a former FDIC examiner, to act as a consultant in dealing with the FDIC, and to review the FDIC's criticisms of the Bank's policies. The non-attorney employee was not hired specifically with respect to the November 21, 1990 note.

Undisputedly, the non-attorney employee did not work for any lawyer. Instead, he worked for the Bank before any lawyer was involved in representing the Bank and reported the results of his investigation to the Bank itself. Furthermore, any communication of the investigation's results to the attorneys concerned facts designed to secure concealment of the Bank's crime or fraud. Indeed, the non-attorney employee advised the Bank to retain attorneys after the non-

attorney employee concluded his investigation. While the result of the non-attorney's investigation may have been, and probably was, used by lawyers for the Bank in preparing a defense to the FDIC's claim, the use of the non-attorney's investigation does not negate the fact that he was not hired by any attorney nor worked for any attorney. Hence, the district court properly concluded that neither the attorney-client or work-product privileges applied to the non-attorney.

### III.

A client's criminal or fraudulent activities are not to be encouraged. The protective shield of the attorney-client and work-product privileges is appropriately pierced when a client attempts to use these privileges to further criminal or fraudulent activities. As the Supreme Court aptly stated in *Clark v. United States*, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933), "[a] client who consults an attorney for advice that will serve him in commission of a fraud will have no help from the law. He must let the truth be told." *Id.* at 15, 53 S.Ct. at 469. Hence, the district court properly applied, in all instances which concern us here, the crime-fraud exception to the attorney-client and work-product privileges.

Accordingly, the judgment of the district court is

*AFFIRMED.*

---

**3.** As the record bears out, the loan was actually made November 27, 1990.

**4.** The Bank later hired the consultant as an employee.