**In Re: GRAND JURY PROCEEDINGS #5 Empanelled January 28, 2004**

**United States of America, Plaintiff–Appellee,**

v.

**Under Seal, Defendant,**

and

**Under Seal, Intervenors–Appellants.**

**No. 04–2168.**

United States Court of Appeals, Fourth Circuit.

Argued: Dec. 3, 2004.

Decided: March 11, 2005.

New York, New York, for Appellants. J. Strom Thurmond, Jr., United States Attorney, Columbia, South Carolina, for Appellee.

Before MOTZ and GREGORY, Circuit Judges, and Richard L. WILLIAMS, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Vacated and remanded by published opinion. Judge GREGORY wrote the opinion, in which Judge MOTZ and Senior Judge WILLIAMS joined.

## OPINION

GREGORY, Circuit Judge:

This case concerns an appeal from an order by the district court denying a motion to quash a grand jury subpoena. The subpoena seeks documents and testimony from an attorney involving his representation of two individuals and their corporation. The individuals intervened and moved to quash the subpoena asserting both attorney-client and work product privileges. The district court judge conducted an *in camera* hearing in which the Government presented evidence *ex parte* concerning the grand jury's investigation, but the judge did not examine the documents that the individuals ("Intervenors") claim are privileged. Thereafter, the judge ruled that the Government had made out a prima facie case that the crime-fraud exception applied, thus vitiating the privileges. Because we find that the judge abused his discretion by finding the crime-fraud exception to apply, we vacate and remand.[1]

**ARGUED:** Herald Price Fahringer, Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, New York, New York, for Appellants. Winston David Holliday, Jr., Assistant United States Attorney, Office of the United States Attorney, Columbia, South Carolina, for Appellee. **ON BRIEF:** John Dennis Delgado, Columbia, South Carolina; Erica T. Dubno, Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria,

---

1. All documents and briefs in this case have been filed under seal to protect the secrecy of ongoing grand jury proceedings. Accordingly, we dispense with a recitation of the facts. We include any facts necessary to our analysis as appropriate.

## I.

### A. The Grand Jury Process and Common–Law Privileges

■ Grand jury proceedings occupy an essential role in the federal criminal justice system. A grand jury serves the invaluable function of both "determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions." *Branzburg v. Hayes,* 408 U.S. 665, 686–87, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). To this end, a grand jury's "investigative powers are necessarily broad ... [and its] authority to subpoena witnesses is not only historic, but essential to its task." *Id.* at 688 (internal citations omitted). Thus, in the context of a grand jury subpoena, the longstanding principle that the public has a right to each person's evidence is particularly strong. *Id.* Absent a compelling reason, a court may not interfere with the grand jury process. *In re Weiss,* 596 F.2d 1185, 1186 (4th Cir.1979).

A court will intervene, however, when a recognized privilege provides a legitimate ground for refusing to comply with a grand jury subpoena. *In re Sealed Case,* 676 F.2d 793, 806 (D.C.Cir.1982). Recognized privileges are those protected by the Constitution, common law, or statute. *Branzburg,* 408 U.S. at 688, 92 S.Ct. 2646 (citing *United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950)). At issue in this case are two such common-law privileges: attorney-client and work product.

■ Attorney-client privilege protects confidential communications between the client and the attorney. As "the oldest of the privileges for confidential communications known to the common law ... [i]ts purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader

public interests in the observance of law and administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Because the attorney-client privilege exists for the benefit of the client, the client holds the privilege.

■ The work product privilege protects an attorney's work done in preparation for litigation. *In re Grand Jury Proceedings, Thurs. Special Grand Jury Session Sept. Term, 1991,* 33 F.3d 342, 348 (4th Cir.1994). It is premised on the idea that "[n]ot even the most liberal of discovery theories can justify unwarranted inquires into the files and the mental impressions of an attorney." *Hickman v. Taylor,* 329 U.S. 495, 510, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The privilege encompasses both "fact" work product and "opinion" work product. Fact work product, which consists of documents prepared by an attorney that do not contain the attorney's mental impressions, "can be discovered upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *In re Grand Jury Proceedings,* 33 F.3d at 348; *see also In re John Doe,* 662 F.2d 1073, 1076 (4th Cir.1981) (defining fact work product). Opinion work product, which does contain the fruit of an attorney's mental processes, is "more scrupulously protected as it represents the actual thoughts and impressions of the attorney." *In re Grand Jury Proceedings,* 33 F.3d at 348. Because the work product privilege protects not just the attorney-client relationship but the interests of attorneys to their own work product, *Hickman,* 329 U.S. at 511, 67 S.Ct. 385, the attorney, as well as the client, hold the privilege.

## B. *The Crime–Fraud Exception*

Both the attorney-client and work product privileges may be lost, however, when a client gives information to an attorney for the purpose of committing or furthering a crime or fraud. *See In re Grand Jury Subpoena (U.S. v. Under Seal)*, 884 F.2d 124, 127 (4th Cir.1989). The party asserting the crime-fraud exception, the Government in our case, must make a prima facie showing that the privileged communications fall within the exception. *Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir.1999). In satisfying this prima facie standard, proof either by a preponderance or beyond a reasonable doubt of the crime or fraud is not required. *See Union Camp Corp. v. Lewis*, 385 F.2d 143, 145 (4th Cir.1967) ("[The Government] was not at this [prima facie] stage of the proceedings required to prove the crime or fraud in order to secure the evidence."). Rather, the proof "must be such as to subject the opposing party to the risk of non-persuasion if the evidence as to the disputed fact is left unrebutted." [2] *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1220 (4th Cir.1976) (citations omitted). Further, "[w]hile such a showing may justify a finding in favor of the offering party, it does not necessarily compel such a finding." *Id.*

Specifically, we have held that the party invoking the crime-fraud exception must make a prima facie showing that (1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme, and (2) the documents containing the privileged materials bear a close relationship to the client's existing or future scheme to commit a crime or fraud. *Chaudhry*, 174 F.3d at 403. Prong one of this test is satisfied by a prima facie showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed. *See In re Grand Jury Investigation*, 842 F.2d 1223, 1226 (11th Cir.1987); *In re Sealed Case*, 676 F.2d at 815; *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1242 (5th Cir.1982). Prong two may be satisfied with a showing of a close relationship between the attorney-client communications and the possible criminal or fraudulent activity. *Chaudhry*, 174 F.3d at 403.

When applying the crime-fraud exception to the attorney-client privilege, we have held that it is the client's knowledge and intentions that are of paramount concern because the client is the holder of the privilege. *In re Grand Jury Proceedings (U.S. v. Under Seal)*, 102 F.3d 748, 751 (4th Cir.1996). Therefore, for the exception to apply, the attorney need not be aware of the illegality involved. *Id.* Rather, "it is enough that the communication furthered, or was intended by the client to further, that illegality." *Id.* (internal citations omitted).

Our jurisprudence on the application of the crime-fraud exception to the work product privilege is less well-defined.

**2.** The statement suggests "that the party asserting the privilege may respond with evidence to explain why the vitiating party's evidence is not persuasive." *In re Grand Jury Proceedings*, 33 F.3d at 352. However, we have explicitly held that the necessary secrecy of the grand jury process prevents the party asserting the privilege from viewing the government's *in camera* evidence. *Id.* at 353 (citing *In re Grand Jury Subpoena*, 884 F.2d at 126–28). This does not mean that the party asserting the privilege may not seek to rebut the government's assertion that the crime-fraud exception should apply and thereby demonstrate that the government has not proven its prima facie case, rather it means that the party cannot have access to the allegations in the government's *in camera* submission to do so.

We have explicitly held that the crime-fraud exception applies to opinion work product. *In re Doe*, 662 F.2d at 1079. We have also found that because the attorney, as well as the client, has the right to assert the opinion work product privilege, a prima facie case of crime or fraud must also be made out against the attorney for the exception to apply.[3] *In re Grand Jury Proceedings*, 33 F.3d at 349. Thus, while the attorney-client privilege may be vitiated without showing that the attorney knew of the fraud or crime, those seeking to overcome the opinion work product privilege must make a prima facie showing that the "attorney in question was aware of or a knowing participant in the criminal conduct." *Id.* If the attorney was not aware of the criminal conduct, a court must redact any portions of subpoenaed materials containing opinion work product. *Id.*

While we have applied the crime-fraud exception in cases in which fact work product was also at issue, our case law has not explicitly delineated the manner in which the crime-fraud exception applies to fact work product. In *In re Doe*, 662 F.2d at 1080, while recognizing that the crime-fraud exception applied to the opinion work product at issue, we found that the government could discover the fact work product at issue because it had demonstrated both a need for the fact work product and that it could not obtain the equivalent without undue hardship. Later, in *In re Grand Jury Proceedings*, 102 F.3d

at 752, we found that the government's prima facie evidence of fraud vitiated both the attorney-client privilege and the fact work product privilege when the attorneys at issue unknowingly furthered the fraud. These cases, as well as those from other circuits, suggest that fact work product is treated differently than opinion work product under the crime-fraud exception. *See In re Grand Jury Proceedings*, 867 F.2d 539, 541 (9th Cir.1988) (noting that attorney could be ordered to testify about fact work product upon showing that client was engaged in criminal activity but that government must show that attorney knowingly participated in the criminal activity to secure attorney's testimony about opinion work product); *In re Antitrust Grand Jury Advance Publ'ns, Inc.*, 805 F.2d 155, 163–64, 168 (6th Cir.1986) (same); *In re Special Sept. 1978 Grand Jury (II)*, 640 F.2d 49, 63 (7th Cir.1980) (same).

Because fact work product enjoys less protection than opinion work product, it may be discovered upon prima facie evidence of a crime or fraud as to the client only and thus even when the attorney is unaware of the crime or fraud. While the attorney, along with the client, holds the fact work product privilege, the discovery of facts furnished to an attorney does not implicate the same concerns as does invading the necessary privacy of an attorney's opinion work product, an invasion only justified if the attorney himself knows of the fraud. We thus use similar standards

---

**3.** In *In re Doe*, we indicated that more than prima facie evidence of the crime or fraud must be shown to overcome the opinion work product privilege. 662 F.2d at 1080 (stating "[a]ppellant correctly contends that not only must the government make a prima facie showing of fraud but must show a greater need for the opinion work product material than was necessary in order to obtain the fact work product material"). A careful reading of that opinion and subsequent case law interpreting it, *see, e.g., In re Grand Jury Proceed-* *ings*, 33 F.3d at 348, demonstrates that we were referring to the general prerequisites that must be met to obtain opinion work product versus fact work product because opinion work product, unlike fact work product, is only discoverable in "extraordinary circumstances." Prima facie evidence of the illegal activities of an attorney clearly suffices as an extraordinary circumstance needed to discover opinion work product. *In re Doe*, 662 F.2d at 1079–80.

when applying the crime-fraud exception to attorney-client and fact work product privileges.[4]

## C. *In Camera Hearings*

■ Frequently, judges use *in camera* hearings to determine if the crime-fraud exception should apply. When an *in camera* hearing involves an examination of the actual documents for which privilege is claimed, the United States Supreme Court's decision in *United States v. Zolin,* 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989), controls. In *Zolin,* the Court found that the allegedly privileged documents could themselves be examined *in camera* to determine whether the crime-fraud exception applies, but that the party invoking the exception must first make a threshold showing that the documents could potentially demonstrate the existence of the crime or fraud before an *in camera* hearing could occur. *Id.* at 572, 109 S.Ct. 2619. Specifically, the Court stated:

> Before engaging in *in camera* review [of allegedly privileged documents] to determine the applicability of the crime-fraud exception, "the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person," that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.

*Id.* (internal citations omitted). Once this showing is made, a judge can review the allegedly privileged documents *in camera* to assist the court in determining if the government has presented a prima facie

case that the crime-fraud exception should apply.

However, the *Zolin* decision does not speak to situations (such as here) in which a judge examines evidence from the opponent of the privilege, usually the government, *ex parte* and *in camera* without examining the allegedly privileged documents themselves. While the government must still make a prima facie case demonstrating that the crime-fraud exception applies, we have rejected the proposition that the government must meet an initial burden to qualify it for an *in camera* hearing of evidence alone. In *In re Grand Jury Proceedings,* 33 F.3d at 351, we upheld a district court's decision that had found the crime-fraud exception to apply after conducting an *in camera* hearing of both the government's submission, which the privilege-holder had not seen, and the privilege-holder's submission, which consisted of detailed summaries of the allegedly privileged documents.

In that case, while the appellants urged that *Zolin* should apply, we found that "*Zolin* did not provide a general rule applicable to all *in camera* reviews of any materials submitted by parties" and that the government was thus not required to demonstrate an adequate factual basis for support of the crime-fraud exception before making an *in camera* submission to the district court. *In re Grand Jury Proceedings,* 33 F.3d at 350. We noted that because the district court had access to the grand jury's proceedings from the government's submission as well as the privilege-holder's summaries of the allegedly privileged documents, it was in its discretion to determine whether it was necessary to review the actual documents. *Id.* at 351.[5]

---

**4.** A court may also order fact work product produced, without invoking the crime-fraud exception, if the party opposing the privilege demonstrates a substantial need for the material and an inability to secure the substantial

equivalent of the materials elsewhere without undue hardship. *In re Grand Jury Proceedings,* 33 F.3d at 348.

**5.** At least two circuits have found that a district court must review allegedly privileged

## II.

Intervenors challenge the district court's decision on several grounds.[6] Most significantly, they argue that the judge erred by not examining the allegedly privileged documents *in camera*. Without such an examination, Intervenors contend that the subpoena was over-broad in that the judge failed to limit the subpoena to only those communications made in furtherance of a crime or fraud.

A district court's determination that the government made a prima facie showing of crime or fraud should be upheld "absent a clear showing of abuse of discretion."[7] *In re Grand Jury Subpoena*, 884 F.2d at 127. "A district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 403, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)). In this case, we must determine whether the district court abused its discretion in finding that the Government presented a prima facie case of the crime-fraud exception as to both the attorney-client and work product privileges without examining the allegedly privileged documents.[8]

Turning first to the application of the crime-fraud exception to attorney-client privilege, under prong one of the exception, the Government was required to make a prima facie showing that Intervenors were engaged in or planning a criminal or fraudulent scheme when they sought the advice of counsel to further the scheme. As noted, this prong is satisfied by a showing of evidence that, if believed

documents *in camera* before determining whether the crime-fraud exception applies. *See In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 645 (8th Cir.2001) (noting that it could not find any case in which it affirmed an order to produce documents under the crime-fraud exception when the district court did not first review the documents *in camera*); *In re Antitrust Grand Jury*, 805 F.2d 155, 168 (6th Cir.1986) (finding that district court committed plain error by ruling that the government established a prima facie case of the crime-fraud exception and ordering documents produced without examining the documents *in camera*).

6. Intervenors raise other arguments, including constitutional issues. Because we remand this case on other grounds, we do not reach these issues.

7. Our decision in *In re Grand Jury Proceedings (U.S. v. Under Seal)*, 102 F.3d 748 (4th Cir. 1996), confuses the proper standard of review by stating: We review the district court's determination that the government made a prima facie showing of the Bank's crime or fraud for abuse of discretion. *In re Grand Jury Proceedings*, 33 F.3d 342, 349 (4th Cir. 1994). The district court's determination that the crime-fraud exception overrides the fact

work-product privilege is reviewed *de novo*. *Id.* at 353. 102 F.3d at 751. In *In re Grand Jury Proceeding*, 33 F.3d 342 (4th Cir.1994), we held that the abuse of discretion standard governs when reviewing a district court's decision that the government presented prima facie evidence that the crime-fraud exception applies, *id.* at 349, but that the *de novo* standard governs when reviewing a district court's determination that documents are not privileged because they do not meet the definition of attorney-client communications or work product, *id.* at 353. Therefore, the abuse of discretion standard properly governs our review of whether the Government presented prima facie evidence of a crime or fraud so as to vitiate the asserted privileges in this case. If we were reviewing whether the communications in this case were privileged, then the *de novo* standard of review would be proper.

8. We assume, as did the district court, that the communications sought are privileged. The Government argues in its brief that Intervenors have failed to establish that the communications are privileged. Because we cannot make a ruling on whether the communications are privileged on the record before us, we leave it to the district court, on remand, to make this determination.

by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed. Our review of the evidence that the Government presented *in camera* demonstrates that the district court did not abuse it discretion in finding that *some violation* of a federal criminal statute was either ongoing or about to be committed.

Despite this finding, under prong two of the exception, Intervenors' privileged communications must bear a close relationship to their existing or future scheme to commit a crime or fraud. The communications subpoenaed in this case consist of both documents and testimony. As to the documents, we find that under the "close relationship" standard, the district court abused its discretion. The district court simply could not have concluded that any sort of relationship exists between the allegedly privileged documents and the alleged crime because it was presented with no evidence of the contents of these documents. Our holding in *In re Grand Jury Proceedings*, 33 F.3d at 351, is notably distinguishable because the district court in that case had detailed summaries of the allegedly privileged documents and, after examining these summaries along with the government's evidence, determined in its discretion that actual examination of the documents was not necessary.

Here, the district court had no such summaries and no basis on which to conclude that these documents are connected to crime or fraud. Indeed, no discussion even took place as to what information these documents might contain. We thus remand this case back to the district court either to examine the actual documents (or summaries thereof) *in camera* or to otherwise determine whether they satisfy prong two of the crime-fraud exception as it applies to attorney-client privilege. In so doing, we do not hold that a district court

must examine allegedly privileged documents (or summaries thereof) *in camera* before determining whether the crime-fraud exception applies. A district court may be able to determine by other means that allegedly privileged documents are connected to a crime or fraud such as through testimony or a reliable government proffer.

 Whether the district court abused its discretion in determining that the crime-fraud exception applied such that the attorney could be compelled to testify before the grand jury presents a somewhat more difficult question. After reviewing the evidence the Government presented *in camera*, we find that it is unclear if the communications about which the grand jury seeks to question the attorney bear a close relationship to the alleged criminal conduct. Some *in camera* evidence does show that the attorney was present at meetings in which the alleged criminal conduct *could have been* discussed, but the evidence is certainly not persuasive in this regard.

We conclude that without more evidence that the attorney's communications are closely connected to the alleged criminal conduct, the district court also abused its discretion in ordering the attorney to testify. It may be that an *in camera* review of the allegedly privileged documents or of the attorney's testimony will demonstrate that the communications during these meetings did relate to the alleged criminal conduct. But the record before us currently does not support application of the crime-fraud exception to the communications between the attorney and Intervenors.

Because the attorney has asserted the work-product privilege, we must also determine the application of the crime-fraud

exception to this privilege.[9] The record does not reveal whether the alleged work product at issue consists of fact work product, opinion work product, or both. Because we apply the crime-fraud exception to the fact work product and attorney-client privileges under similar standards, to the extent that the subpoenaed materials and testimony contain fact work product, the district court should evaluate them under our previously discussed finding on attorney-client privilege.

However, as noted, opinion work product is treated differently. While the Government did present evidence demonstrating that some violation of a federal criminal statute was ongoing or about to be committed under prong one, it did not demonstrate (or attempt to demonstrate at the *in camera* hearing) that the attorney knew of the violation. Therefore, on remand, the district court must also determine whether the Government has presented prima facie evidence of the crime-fraud exception as applied to the attorney. If the district court determines that a prima facie showing has not been made as to the attorney, but has as to the client, and thus orders the subpoenaed documents to be turned over, it must redact any portions of the documents that contain opinion work product. If the court makes such a finding, the attorney would also be entitled to assert work product privilege as to his testimony before the grand jury that contains opinion work product.

## III.

We are both mindful and cautious of the premise that "[w]hen a grand jury's subpoena is at stake, the standard for evaluat-

ing an exception argument must be simple enough for courts to administer swiftly and efficiently, without obstructing the grand jury's mission or squandering judicial resources." *In re Sealed Case*, 676 F.2d at 814. By remanding this case to the district court, we do not seek to further delay or complicate this process. We seek to ensure that both the grand jury system and the privileges that protect the attorney-client relationship are safeguarded. To do so, we must achieve a balance between the broad and necessary powers of the grand jury and the guarded blanket of confidentiality surrounding the attorney-client relationship. By ensuring that prima facie evidence of the crime-fraud exception is properly presented and examined before communications are ordered revealed, we preserve such balance.

In sum, we remand this case to the district court to examine the allegedly privileged communications (or summaries thereof) *in camera* or to otherwise determine if the allegedly privileged documents may be ordered produced and the attorney ordered to testify under the crime-fraud exception as it applies to the attorney-client and work product privileges.

*VACATED AND REMANDED*

---

**9.** The record is somewhat unclear on whether the attorney asserted work product privilege because it only reflects that the attorney "joined" in Intervenors' motion to quash. However, the Assistant United States Attorney stipulated during oral argument that the attorney has independently asserted work product privilege.