**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 07-1889**

———————

In Re:  GRAND JURY SUBPOENA #06-1

----------------------------------------

UNITED STATES OF AMERICA,

    Petitioner - Appellee,

   v.

UNDER SEAL #4,

    Movant - Appellant,

   and

UNDER SEAL,

    Party in Interest.

———————

**No. 07-2024**

———————

In Re:  Grand Jury Investigation 07-01 Witness:  John Doe No.
A01-246(T-112)(GBL)

----------------------------------------

UNITED STATES OF AMERICA,

    Petitioner - Appellee,

   v.

UNDER SEAL,

    Respondent - Appellant.

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Gerald Bruce Lee, District Judge. (1:06-mc-00001; 1:07-mc-1)

Argued: March 21, 2008          Decided: April 21, 2008

Before MOTZ, TRAXLER, and DUNCAN, Circuit Judges.

No. 07-1889 affirmed; No. 07-2024 vacated and remanded by unpublished per curiam opinion.

**ARGUED:** Mitka Tamara Lynn Baker, DLA PIPER US LLP, Washington, D.C., for Appellant in No. 07-1889; Douglas S. Laird, POLSINELLI SHALTON FLANIGAN SUELTHAUS PC, Kansas City, Missouri, for Appellant in No. 07-2024. Gordon Dean Kromberg, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Nancy Luque, DLA PIPER US LLP, Washington, D.C., for Appellant in No. 07-1889. Chuck Rosenberg, United States Attorney, Steven P. Ward, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

These consolidated appeals arise from a series of district court orders involving production of documents sought by a grand jury in the Eastern District of Virginia. An attorney ("Counsel") refused to turn over some of the materials requested by the grand jury on the ground that they reflected confidential communications between Counsel and a former client. The court rejected Counsel's assertion of privilege, however, holding that because the former client ("Parent") was a defunct corporation, neither it nor an attorney acting on its behalf was capable of asserting attorney-client privilege. The court also rejected a motion to intervene filed by a former subsidiary of Parent ("Subsidiary"), holding that Parent and Subsidiary did not share a joint privilege in the communications at issue, and, accordingly, Subsidiary lacked standing to intervene to quash the subpoena served on Counsel. Both Counsel and Subsidiary appeal; we consolidated the appeals, and consider both in this opinion. For the reasons set forth within, we vacate and remand in the Counsel's appeal (No. 07-2024), and we affirm in the Subsidiary's appeal (No. 07-1889).[1]

_____

[1]All documents and briefs in this case have been filed under seal to protect the secrecy of the grand jury proceedings. We therefore refer to the parties by generic names to avoid disclosing their identities.

I.

From 1983 to 2000, Counsel provided legal advice to Parent, a Virginia corporation, regarding the application of federal laws to various types of monetary transfers. In 2000, the officers and directors of Parent decided to dissolve the company and filed Articles of Termination with state authorities to extinguish the company's corporate existence. At this time, Parent also transferred its stock in Subsidiary to another organization; thus, Subsidiary's corporate existence did not cease with Parent's termination.

In 2006, a grand jury in the Eastern District of Virginia convened to investigate monetary transfers made on Parent's behalf. The grand jury issued subpoenas duces tecum to various entities, including Parent, seeking documents related to the transfers. When no individuals appeared before the court on Parent's behalf, the court granted the Government's motion to hold the company in contempt.

The grand jury then issued a subpoena duces tecum to Counsel seeking "any and all documents relating to [Parent]." Counsel produced some documents but withheld others, citing work-product and attorney-client privileges. The Government moved to compel production of the withheld documents, claiming that the attorney-client privilege does not survive the termination of a corporation and that, in this case, the crime-fraud exception vitiates any

4

attorney-client privilege. The district court granted the Government's motion to compel, holding that Parent "may not assert the attorney client privilege because the business entity is no longer in existence and there are no longer any corporate officers to assert the privilege on the entity's behalf."[2] The court stayed its order, however, granting Subsidiary leave to file an ex parte and in camera memorandum as well as submissions demonstrating that it had standing to intervene and quash the subpoena served on Counsel.

After reviewing Subsidiary's submissions, the district court denied Subsidiary's motion to intervene. The court found the submissions insufficient to show that Parent and Subsidiary were sufficiently closely related to treat them as a single corporate entity and noted that, in any event, the companies lacked a common legal interest in the communications at issue. The court then ordered Counsel to turn over the withheld materials and granted the Government's motion to hold Counsel in contempt, though it stayed both orders pending appeal. Both Subsidiary and Counsel timely appealed.

---

[2]The court did not address the Government's contention that the crime-fraud exception vitiated any asserted privilege in the withheld communications.

5

We have consistently held that "[t]he burden is on the proponent of the attorney-client privilege to demonstrate its applicability." United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982); see also In re Grand Jury Subpoena, 341 F.3d 331, 335 (4th Cir. 2003). In this case, the district court held that Counsel had not met that burden, because Counsel's argument failed as a legal matter. The court reasoned that Parent, a defunct corporation with no corporate officers or directors, was incapable of asserting the privilege, and thus Counsel could not assert privilege on Parent's behalf.[3]

On appeal, Counsel contends that the district court erred in this legal determination. Counsel argues that applicable Supreme Court precedent requires that the attorney-client privilege survive corporate dissolution, and therefore the district court should have permitted Counsel to assert the privilege on Parent's behalf. See Swidler & Berlin v. United States, 524 U.S. 399 (1998) (holding that the attorney-client privilege survives the death of the client when the client is a natural person).

The Government responds, in part, by contending that even if this court were to adopt the legal rule proposed by Counsel, the

---

[3]It is well established that if the client may invoke attorney-client privilege to protect confidential communications, then the client's attorney also may also do so on the client's behalf. See Fisher v. United States, 425 U.S. 391, 402 n.8 (1976).

communications at issue nevertheless bore a close relationship to Parent's violation of federal law, and therefore the crime-fraud exception applies to vitiate any asserted privilege in the communications. See Clark v. United States, 289 U.S. 1, 15 (1933); In re Grand Jury Proceedings #5, 401 F.3d 247, 251 (4th Cir. 2005); In re Grand Jury Subpoena, 884 F.2d 124, 127 (4th Cir. 1989). The district court did not make any findings with respect to that contention, choosing to address only the legal question of whether the privilege survives corporate termination.

The district court was not obligated to proceed in this manner. In United States v. Zolin, 491 U.S. 554, 567 (1989), the Supreme Court specifically explained that "in crime-fraud cases," courts are not required to adhere to "a strict progression of proof." There, the Court found "no basis for holding that the [communications at issue] . . . must [first] be deemed privileged . . . while the question of crime or fraud remains open." Id. at 568; see also In re Grand Jury Proceedings, 183 F.3d 71, 74 (1st Cir. 1999) (applying Zolin to conclude that it was "unimportant" whether the district court had held communications not privileged because "the communications . . . do not satisfy the requirements of the privilege" or because "an exception thereto" applied). We take this language to mean that a district court may, when considering whether a party must produce communications pursuant to a subpoena, first assess either whether a privilege applies or

7

whether the crime-fraud exception would nevertheless vitiate any asserted privilege.

In this case, the Government has made a colorable argument that the crime-fraud exception would apply to the withheld communications. We find it appropriate, therefore, to vacate the district court's order and remand the case to allow the court to consider the Government's contention that "the client was engaged in or planning a criminal or fraudulent scheme when he sought the advise of counsel to further the scheme" and that those communications "bear a close relationship to the client's existing or future scheme to commit a crime or fraud." In re Grand Jury Proceedings #5, 401 F.3d at 251. Should the district court so hold, that holding would obviate the need to address the unsettled legal question of whether the corporate attorney-client privilege survives dissolution of the corporate entity.

The district court may determine whether the crime-fraud exception applies in one of two ways. As the Supreme Court explained in Zolin, the court may examine the assertedly privileged documents themselves in an in camera hearing, provided that the party invoking the exception, here the Government, first makes a threshold "showing of a factual basis adequate to support a good faith belief by a reasonable person" that the hearing would reveal evidence of crime or fraud. 491 U.S. at 572 (internal quotation marks omitted); see also In re Grand Jury Proceedings #5, 401 F.3d

8

at 253 ("Once this [threshold] showing is made, a judge can review the allegedly privileged documents in camera to assist the court in determining if the government has presented a prima facie case that the crime-fraud exception should apply."). Alternatively, the district court may "examine[] evidence from the opponent of the privilege," here the Government, "ex parte and in camera without examining the allegedly privileged documents themselves." In re Grand Jury Proceedings #5, 401 F.3d at 253. Under this approach, the Government would not be required to make a threshold showing regarding the factual basis for application of the exception prior to making the in camera submission. See id.; see also In re Grand Jury Proceedings, 33 F.3d 342, 350-51 (4th Cir. 1994). In either case, however, on remand the Government bears the burden of establishing a prima facie case demonstrating that the crime-fraud exception applies. See In re Grand Jury Proceedings #5, 401 F.3d at 251.


III.

We turn next to Subsidiary's appeal and address whether Subsidiary may intervene to assert privilege in the withheld documents and quash the subpoena served on Counsel. A third party has standing to intervene in grand jury proceedings and challenge the validity of a subpoena directed to another person or entity when the third party has a legally cognizable interest in the

9

materials sought. See, e.g., Gravel v. United States, 408 U.S. 606, 608-609 & n.1 (1972); see also In re Grand Jury Subpoenas, 144 F.3d 653, 658 (10th Cir. 1998) ("If the attorney-client privilege does exist between Intervenor . . . and [the attorneys subject to the subpoena], then Intervenor has standing [to assert the attorney-client privilege].").

Here, Subsidiary sets forth two arguments in support of its claim that it is entitled to intervene. First, Subsidiary contends that the withheld documents reflect confidential communications concerning Counsel's provision of legal advice to Subsidiary. That is, Subsidiary asserts its own -- rather than a joint -- attorney-client privilege in the communications. The district court did not explicitly address this argument, though we take its failure to do so as an implicit determination that Subsidiary did not meet its burden of establishing that the communications concerned confidential communications between Counsel and Subsidiary. After independently reviewing the record, we conclude that that determination was not in error. Subsidiary has failed to put forth sufficient evidence to support its claim that the communications at issue in any way pertained to Counsel's representation of Subsidiary. Therefore, Subsidiary may not assert its own attorney-client privilege -- independent of any joint privilege it may share with Parent -- in the communications.

Second, Subsidiary argues that it may assert a joint attorney-client privilege in the communications between Parent and Counsel because of its status as a former subsidiary of Parent. See, e.g., In re Teleglobe Commc'ns Corp., 493 F.3d 345, 362-63 (3d Cir. 2007) (describing the "joint client" or "co-client" privilege); Restatement (Third) of the Law Governing Lawyers § 75(1) (2000) ("If two or more persons are jointly represented by the same lawyer in a matter, a communication of either co-client that . . . relates to matters of common interest is privileged as against third persons . . . ."). Indeed, a number of courts have held that close corporate affiliation, including that shared by a parent and a subsidiary, suffices to render those entities "joint clients" or "co-clients," such that they may assert joint privilege in communications with an attorney pertaining to matters of common interest. See, e.g., Glidden Co. v. Jandernoa, 173 F.R.D. 459, 472-73 (W.D. Mich. 1997); United States v. Am. Tel. & Tel. Co., 86 F.R.D. 603, 616-18 (D.D.C. 1979); Duplan Corp. v. Deering Milliken Research Corp., 397 F. Supp. 1146, 1184-85 (D.S.C. 1974). As the Third Circuit has explained in some detail, however, the scope of the joint client or co-client privilege is circumscribed by the "limited congruence of the clients' interests." In re Teleglobe Commc'ns Corp., 493 F.3d at 362-63 ("As the Restatement notes, a co-client relationship is limited by 'the extent of the legal matter of common interest.'" (quoting the Restatement (Third) of

11

the Law Governing Lawyers § 75 cmt. c)); <u>see also</u> <u>id.</u> at 366 ("[B]ecause co-clients agree to share all information related to the matter of common interest with each other and to employ the same attorney, <u>their legal interests must be identical (or nearly so)</u> in order that an attorney can represent them all with the candor, vigor, and loyalty that our ethics require." (emphasis added)).

In the present case, the district court held that Subsidiary failed to demonstrate that the withheld communications pertained to a matter in which both Parent and Subsidiary shared a common legal interest, and thus Subsidiary lacked standing to intervene to quash the subpoena. After reviewing Subsidiary's <u>ex parte</u> submissions in support of its claim to the contrary, we conclude that the district court did not err in its determination. Subsidiary has failed to demonstrate that the communications reflected any "legal matter of common interest." <u>See</u> Restatement (Third) of the Law Governing Lawyers § 75 cmt. c. Therefore, it has not satisfied its burden of establishing that the joint client or co-client privilege applies, and the district court properly denied its motion to intervene. <u>See</u> <u>Jones</u>, 696 F.2d at 1072.

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED IN NO. 07-1889 AND VACATED
AND REMANDED IN NO. 07-2024.