NIEMEYER, Circuit Judge,
concurring in part and dissenting in part:
The question we must answer is whether a grand jury subpoena directing an attorney to testify as to what some third-party witness told her violates the work-product rule in circumstances implicating the crime-fraud exception. Specifically, the dispute here centers on whether a grand jury subpoena can require members of a criminal defense' team to testify as to what a third-party witness told them when providing them with a. fraudulent document, nothing more. ,
The district court reasoned that this evidence, although part of the attorney’s work product, amounted only to historical fact that did not involve the attorney’s mental impressions or opinions. The court therefore concluded that because the inquiry was justified by the crime-fraud exception, the evidence could be obtained. I agree.. Asking an- attorney to recall what a witness told her about a specific- document reveals at most a de minimis amount of attorney impression—namely, that the attorney presently believes she can remember a witness’s words.
The work-product rule protects matters prepared in anticipation of litigation. In the seminal case of Hickman v. Taylor, 329 U.-S. 495, 67 S.Ct. 385, 91 L.Ed; 451 (1947), the Supreme Court held that an attorney’s work product was entitled to a qualified privilege from discovery under the Federal Rules of Civil Procedure. In doing so, the Court explained the policy behind protecting attorney work product:
Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client’s case demands that he assemble information, sift what he considers to be the relevant from, the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients’ interests.
Id. at 510-11, 67 S.Ct. 385. But the Court also made clear that there was a competing policy -underlying the' adversary system—the principle that both sides should- *321 have access to all the facts in a case, including,- if necessary, those in the hands of opposing attorneys. The Court stated:
We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment.... Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession.
Id. at 507, 67 S.Ct. 385 (emphasis added).
The difficult issues arise where the facts sought are intertwined with an attorney’s assessment and preparation of those facts for use in litigation. The cases have, toiled over defining the circumstances when such facts can be or should be produced. Hickman itself indicated that an exception to the work-product rule exists where facts are available only from the hands of an opposing attorney and where necessity and justice require their production. See 329 U.S. at 509, 511-12, 67 S.Ct. 385. That Court, however, denied production of such facts in the case before it—including, as relevant here, oral statements of witnesses made to the defendant’s attorney—because the party seeking the information had not made a sufficient showing to justify the exception. Indeed, the plaintiffs attorney had made no showing, arguing only that the evidence would help him prepare for his own examination of the witnesses and assure him “that he ha[d] overlooked nothing.” Id. at 513, 67 S.Ct. 385. Specifically, as to the witnesses’ oral statements made to the attorney, whether in the form of the attorney’s memory or documented memo-randa, the Court stated, “we do not believe that any showing of necessity can be, made under the circumstances of this case so as to justify production.” Id. at 512, -67 S.Ct. 385 (emphasis added). But even as to such matters, the Court indicated that they might be producible in “rare situation[s].” Id. at 513, 67 S.Ct. 385.
In the years since Hickman, courts have distinguished between “opinion work product” and “fact work product” when assessing the nature of the showing necessary to justify production of attorney work product. To serve the policy of discovery of facts, a court will more likely favor the production of fact work- product, whereas to serve the policy of protecting attorneys’ mental processes during preparation for litigation, a court will more likely protect from production impressions; conclusions, opinions, or legal theories of the attorneys or their- agents. This demarcation was defined more clearly in Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), where the Court stated that “[forcing an attorney to disclose notes and memoranda of witnesses’ oral statements is particularly disfavored, because it tends to reveal the attorney’s mental-processes, [i.e.,] ‘what he saw fit to write down .regarding witnesses’ remarks,’ ” id. at 399, 101 S.Ct. 677 (emphasis added) (quoting Hickman, 329 U.S. at 513, 67 S.Ct. 385). This formulation suggests that requiring an attorney to disclose facts contained in his work product is not so disfavored when doing so does not reveal the attorney’s mental processes. Distilling these principles, we have held that while both types of work product are potentially discoverable, we afford greater protection to “opinion work product” than to “fact work product.” See, e.g., In re Grand Jury Proceedings #5, 401 F.3d 247, 252 (4th Cir. 2005) (“[F]act work product enjoys less protection than opinion work product”); In re Grand Jury Proceedings, 102 F.3d 748, 750 (4th Cir. 1996) (“Opinion work-product ... is • more scrupulously protected as it represents the actual thoughts and impressions of the attorney” (internal quotation marks and citation omitted)).
*322 In this case, I believe that Hickman and its progeny favor disclosure of what are historical facts. The grand jury simply seeks the testimony of an attorney as to what a witness told her about a specific document. Under these circumstances, the government will not obtain the attorney’s impressions about the witness’s statement or require the attorney to evaluate it in any respect—indeed, the attorney could be expressly instructed to omit any impressions from her responses.
The majority’s contrary conclusion rests on the premise that asking an attorney to recall what a third-party witness told her about a specific document would force the disclosure of opinion work product because it “would inevitably reveal what the attorney deemed important enough to remember,” thereby offering a window into the attorney’s mental processes. Ante at 317— 18. Yet, this underlying premise regarding the nature of memory is shaky. Perhaps the attorney remembers what the witness told her about the document because she found it significant to her client’s defense. Or maybe she remembers the statement because the witness made a joke or was wearing an interesting shirt or used a strange turn of phrase. Or maybe the attorney simply has a good memory and is able to relate accurately what was told to her. The grand jury will never know. There thus remains an important difference between an attorney’s present memory of a witness’s statement and her contemporaneous notes and memoranda of a witness’s statement, which are written specifically to document the portions of the statement that she considered relevant to her client’s case—i.e., what she “saw fit to write down.” Upjohn, 449 U.S. at 399-400, 101 S.Ct. 677. Only the latter provides a window into the attorney’s thought process.
At bottom, the subpoenaed testimony “seeks only [a] transaction of the factual events involved,” In re Grand Jury Proceedings, 102 F.3d at 750, namely, what a third-party witness said about a fraudulent document that the witness was providing to the attorney. This is far removed from true opinion work product, which rightfully “enjoys a nearly absolute immunity.” In re Grand Jury Proceedings, 33 F.3d 342, 348 (4th Cir. 1994). Because we all agree that the government’s showing as to the applicability of the crime-fraud exception in this case justifies the production of fact work product, I would apply the exception and allow the grand jury to obtain the attorney’s testimony on the limited question of what the attorney was told by a witness about a specific document, as best the attorney can recollect. Accordingly, I would affirm the district court’s order in full.