# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3938
No. 06-4030

_____

|  |  |  |
|---|---|---|
| In re: Green Grand Jury Proceedings | * | Appeal from the United States |
| | * | District Court for the |
| | * | District of Minnesota. |

_____

Submitted: March 15, 2007
Filed: July 20, 2007

_____

Before WOLLMAN, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

The district court[1] granted in part and denied in part the government's motion to compel the production of documents and an attorney's testimony before a federal grand jury. The government appeals that portion of the district court's order denying its motion to compel. The client cross-appeals, contesting the order insofar as it granted the motion. We affirm.

## I.

In light of the need to observe the requirements of grand jury secrecy, we will provide only a basic recitation of the facts. In the course of earlier, unrelated

_____

[1]The Honorable James M. Rosenbaum, Chief Judge, United States District Court for the District of Minnesota.

proceedings, the client was the target of an investigation into whether he had received improper payments. The client received the assistance of the attorney in responding to these accusations and provided the attorney with an alternate, non-criminal explanation for his conduct. The attorney relied upon this explanation in formulating his legal advice and drafted documents that memorialized what the client said had taken place. The government contends that the client knowingly lied to the attorney by providing the attorney with a false back-story for the monies the client had allegedly improperly received.

In November 2005, a federal grand jury issued subpoenas to the client's attorney and the attorney's law firm, seeking documents as well as the attorney's testimony. In response to the subpoena, the law firm produced a privilege log, identifying 1,604 documents that it claims are protected under the attorney-client or work product privileges. The attorney declined to answer the grand jury's questions, citing attorney-client privilege. In June 2006, the grand jury indicted the client and another party.

The government moved to compel the production of the documents and the attorney's testimony. The government argued that because the client had used his attorney's services to perpetrate a fraud, the attorney-client and attorney work product privileges were vitiated under the crime-fraud exception to these privileges.

The district court reviewed 179 documents *in camera*, 139 of which the government had asked the court to examine. Following a hearing and briefing by the parties, the district court concluded that, under the crime-fraud exception, the client could not assert the attorney-client or work product privileges because the government had presented a prima facie case that the client had used his attorney's counsel in furtherance of a fraud. The court also concluded that because there was no evidence that the attorney had known of the client's fraud, the crime-fraud rule did not preclude the attorney from asserting his own work product privilege. The district court ordered

the disclosure of thirty-six documents that it determined had been generated in furtherance of the fraud, but permitted the attorney to assert his work product privilege as to any opinion work product that might be contained therein. The district court determined that the rest of the documents it had reviewed were not discoverable under the crime-fraud exception because they were not generated in furtherance of any fraud.[2] The district court also permitted the attorney to decline to answer the grand jury's questions, except for questions relating to the origins of documents. The government contests the redactions and the restrictions on the attorney's grand jury testimony. The client appeals that portion of the district court's order requiring the production of the thirty-six documents and the attorney's limited testimony.

II.

A.    Issues Pertaining Primarily to the Government's Appeal

Attorney-client communications and attorney work product are privileged and are not ordinarily discoverable – even by the grand jury. See In re Grand Jury Subpoenas Duces Tecum, 773 F.2d 204, 206 (8th Cir. 1985) (noting that the grand jury's "broad investigatory powers do not require production of evidence protected by a valid claim of privilege"); In re Grand Jury Proceedings (Duffy), 473 F.2d 840, 845 (8th Cir. 1973) (work product privilege applies in grand jury proceedings). Neither the attorney-client privilege nor the work product privilege is absolute, however. Under the crime-fraud exception, attorney-client privilege "does not extend

_____

[2]The government suggests in its opening brief that the district court shielded these documents from discovery not because they were not generated in furtherance of a fraud, but because the court had determined that all of the documents it had reviewed were opinion work product. The government's characterization of the district court's order is mistaken. The district court would not have permitted the discovery of the thirty-six documents had it considered all 179 documents to be opinion work product.

to communications made for the purpose of getting advice for the commission of a fraud or a crime." United States v. Zolin, 491 U.S. 554, 563 (1989) (quotation omitted). Accordingly, we have recognized that, under the crime-fraud exception, "'[a]ttorney-client communications lose their privileged character when the lawyer is consulted not with respect to past wrongdoings but rather to further a continuing or contemplated criminal fraud or scheme.'" Gundacker v. Unisys Corp., 151 F.3d 842, 848 (8th Cir. 1998) (quoting In re Berkley & Co., 629 F.2d 548, 553 (8th Cir. 1980)). We have not yet explicitly held that the crime-fraud exception applies to the work product privilege as well. See In re Murphy, 560 F.2d 326, 337 (8th Cir. 1977) (stating that the applicability of the crime-fraud exception to the work product privilege is an unresolved question). We so hold today. As set forth in greater detail below, a client who has used his attorney's assistance to perpetrate a crime or fraud cannot assert the work product privilege as to any documents generated in furtherance of his misconduct. We also hold that an attorney who does not knowingly participate in the client's crime or fraud may assert the work product privilege as to his opinion work product.

The work product privilege is "distinct from and broader than the attorney-client privilege." In re Murphy, 560 F.2d at 337 (quotation omitted). While the purpose of the attorney-client privilege "is to encourage clients to make a full disclosure of all favorable and unfavorable facts to their legal counsel," id., the work product privilege "functions not merely and (perhaps) not mainly to assist the client in obtaining complete legal advice but in addition to establish a protected area in which the lawyer can prepare his case free from adversarial scrutiny." In re Special September 1978 Grand Jury (II), 640 F.2d 49, 62 (7th Cir. 1980). "Because the work product privilege protects not just the attorney-client relationship but the interests of attorneys to their own work product," both the attorney and the client hold the privilege. United States v. Under Seal (In re Grand Jury Proceedings #5), 401 F.3d 247, 250 (4th Cir. 2005) (citation omitted).

Other circuits have concluded that a client who has used an attorney's assistance in furtherance of a fraud may not assert the work product privilege. See, e.g., In re Special September 1978 Grand Jury (II), 640 F.2d at 63 ("When the case being prepared involves the client's ongoing fraud, however, we see no reason to afford the client the benefit of this doctrine."). We agree. "Although there is a societal interest in enabling clients to get sound legal advice, there is no such interest when the communications or advice are intended to further the commission of a crime or fraud." United States v. Richard Roe, Inc. (In re Richard Roe, Inc.), 68 F.3d 38, 40 (2d Cir. 1995).

An attorney's independent assertion of his work product privilege, on the other hand, stands on a very different footing because the attorney's privilege is based on the attorney's interest in protecting his opinions and thought processes from disclosure. This is a protection that benefits all of the attorney's clients because it accords the attorney a measure of privacy within which he can candidly compose his thoughts.

To determine the proper scope of an attorney's work product privilege when the client has committed a crime or a fraud, it is necessary first to distinguish between two kinds of work product: ordinary work product, which includes "raw factual information," and opinion work product, which encompasses "counsel's mental impressions, conclusions, opinions or legal theories." Baker v. General Motors Corp. (In re GMC), 209 F.3d 1051, 1054 (8th Cir. 2000). We have recognized that opinion work product enjoys "substantially greater protection than ordinary work product." In re Murphy, 560 F.2d at 336. Ordinary work product is generally discoverable "upon a showing of substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." Id. Opinion work product, by contrast, "enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." Id. We suggested, for example, that opinion work product might be discoverable if it contained evidence of the

attorney's misconduct. Id. at 336 n.19. The central question regarding opinion work product, then, is whether client misconduct (of which the attorney is unaware) is a "rare and extraordinary circumstance" warranting an exception to the "nearly absolute immunity" adhering to opinion work product.

Other circuits recognizing the ordinary/opinion work product distinction have concluded that an attorney may assert the work product privilege with regard to opinion work product even if the client has used the attorney's services to commit a crime or perpetrate a fraud, so long as the attorney was unaware that the client was doing so. In re Grand Jury Proceedings #5, 401 F.3d at 252 (holding that "while the attorney-client privilege may be vitiated without showing that the attorney knew of the fraud or crime, those seeking to overcome the opinion work product privilege must make a prima facie showing that the attorney in question was aware of or a knowing participant in the criminal conduct" (quotation omitted)); In re Grand Jury Proceedings, 867 F.2d 539, 541 (9th Cir. 1989) (affirming district court's order permitting an innocent attorney to refuse to disclose opinion work product); In re Antitrust Grand Jury, 805 F.2d 155, 168 (6th Cir. 1986) (ordering the district court to require disclosure of opinion work product should it find that the attorneys were "knowing and willing conspirators in the alleged crime"); In re Special September 1978 Grand Jury (II), 640 F.2d at 63 (remarking that requiring an innocent attorney to disclose "mental impressions, conclusions, opinions, and legal theories"would be an "invasion not justified by the misfortune of representing a fraudulent client").[3] In

_____

[3]The government suggests that some circuits have held that an attorney's work product privilege may be vitiated by client fraud even if the attorney was not aware of the client's wrongdoing. In most of the cases cited by the government for this proposition, however, it appears that the clients were the parties on appeal — not the attorneys. See In re Richard Roe, Inc., 68 F.3d 38, 39 (2d Cir. 1995); In re Grand Jury Subpoena Duces Tecum, 731 F.2d 1032, 1036 (2d Cir. 1984); In re Grand Jury Subpoena, 419 F.3d 329, 335 (5th Cir. 2005). In the one case in which the attorneys were parties, the court determined that they lacked standing. In re Grand Jury Proceedings, 604 F.2d 798, 800 (3d Cir. 1979). Accordingly, it is not clear that the

keeping with the significant protection we accord opinion work product, we hold, as have our sister circuits, that an attorney who is not complicit in his client's wrongdoing may assert the work product privilege with respect to his opinion work product. In light of the lesser protection accorded ordinary work product, we conclude that an innocent attorney may be required to disclose ordinary work product. Cf. In re Grand Jury Proceedings #5, 401 F.3d at 252 ("Because fact work product enjoys less protection than opinion work product, it may be discovered upon prima facie evidence of a crime or fraud as to the client only and thus even when the attorney is unaware of the crime of fraud."); In re Antitrust Grand Jury, 805 F.2d at 163 (concluding that ordinary work product may be disclosed if there has been client fraud).

The government contends that even if the district court correctly held that the attorney's opinion work product was shielded from disclosure, the district court did not properly draw the line between ordinary and opinion fact work product. In particular, the government disagrees with the district court's determination that the attorney's notes and his recollections about conversations he may have had with the client were protectable as opinion work product. We discern no error in the district court's division between opinion and fact work product.

"Notes and memoranda of an attorney, or an attorney's agent, from a witness interview are opinion work product entitled to almost absolute immunity." Baker, 209 F.3d at 1054. An attorney's notes of a witness interview are opinion work product because "when taking notes, an attorney often focuses on those facts that she deems legally significant." Id. Accordingly, the district court correctly determined that the attorney's notes were protectable as opinion work product. The district court's determination regarding the attorney's recollections of conversations with the client

---

attorneys' interest in their work product was squarely before the respective courts in these cases.

was also sound. In Duffy, we concluded that an attorney's recollections of conversations with a client were protectable work product. 473 F.2d at 848. Although, as the government points out, Duffy did not explicitly distinguish between ordinary and opinion work product, Duffy did remark that testimony regarding an attorney's recollections of conversations with clients would reveal the attorney's mental impressions and thought processes. Id. In other words, the attorney's recollections are protectable as opinion work product. In sum, we conclude that the district court drew an appropriate line between ordinary and opinion work product in this case.[4]

B.     Issues Pertaining Primarily to the Client's Cross-Appeal[5]

The client takes issue with the standard the district court used to determine that the thirty-six documents were generated in furtherance of a crime or fraud. The district court held that the crime-fraud standard was met because the government's evidence, if it were believed by the trier of fact, would establish the existence of a crime or fraud. The district court also determined that it would have found that the

---

[4]The government also suggests in its responsive brief that because the district court erred in drawing the line between opinion and fact work product, it may have erred in its determination that the majority of the documents it had reviewed were not generated in furtherance of the fraud. We disagree.

[5]The government argues that the client's appeal was rendered moot because the client produced the documents and did not take advantage of the district court's offer to stay compliance with its order pending appeal. We disagree. First, the appeal is not moot because the courts can still offer some "effectual relief" by ordering the return or destruction of the documents. Church of Scientology v. United States, 506 U.S. 9, 12 (1992). Second, we are not persuaded that the client's decision to forgo the district court's offer to stay the production rendered the appeal moot, even if this inaction may be relevant to waiver. Regarding waiver, the government has not provided us with sufficient reason to conclude that we should not entertain the client's arguments.

crime-fraud exception applied even if it had used a probable cause standard, as the client had suggested. The client argues on appeal that otherwise privileged documents should be discoverable under the crime-fraud exception only if the district court finds "by clear and convincing evidence" that the documents were generated in furtherance of a crime or fraud. The client also contends that a district court should take into account evidence countervailing the application of the crime-fraud exception.[6]

With respect to the quantum of proof, before the crime-fraud exception may be applied, the moving party must "make a prima facie showing that the legal advice has been obtained in furtherance of an illegal or fraudulent activity." United States v. Horvath, 731 F.2d 557, 562 (8th Cir. 1984); see also In re Murphy, 560 F.2d at 337 ("To invoke [the crime-fraud] exception, there must be a *prima facie* showing that the client was engaged or planned to engage in illegal or fraudulent activity when he sought the legal advice."). Courts of appeals have articulated varying standards regarding the quantum of proof necessary to make this prima facie showing. Compare In re Grand Jury Proceedings (Corporation), 87 F.3d 377, 381 (9th Cir. 1996) (requiring "reasonable cause to believe" that the attorneys were being utilized in furtherance of a crime or fraud (quotation omitted)), and In re Antitrust Grand Jury, 805 F.2d 155, 166 (6th Cir.1986) (requiring a prima facie showing based on evidence that would provide a prudent person with "'a reasonable basis to suspect the perpetration of a crime or fraud'" (quoting In re Grand Jury Subpoena Duces Tecum, 731 F.2d 1032, 1039 (2d Cir. 1984))), with Haines v. Liggett Group, Inc., 975 F.2d 81, 95-96 (3d Cir. 1992) (requiring "evidence which, if believed by the fact-finder, would be sufficient to support a finding that the elements of the crime-fraud exception were met"), In re Grand Jury Subpoena, 419 F.3d 329, 336 (5th Cir. 2005) (requiring evidence "such as will suffice until contradicted and overcome by other evidence" to

---

[6]Because the district court articulated an "evidence if believed by a trier of fact" standard, we will assume that contrary evidence did not factor into the final decision. It is clear, however, that the district court did consider each party's legal arguments.

establish crime or fraud (quotation omitted)), In re Sealed Case, 107 F.3d 46, 50 (D.C. Cir. 1997) (requiring evidence "that if believed by the trier of fact would establish the elements of an ongoing or imminent crime or fraud" (quotation omitted)), and In re Grand Jury Proceedings #5, 401 F.3d at 251 (requiring evidence "that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed" and noting that "proof either by a preponderance or beyond a reasonable doubt of the crime or fraud is not required").

In considering the disparate formulations regarding the level of proof necessary to justify the application of the crime-fraud exception, we look to Supreme Court precedent. In Zolin v. United States, the Court considered, *inter alia*, the level of proof necessary to justify a district court's ordering the production of documents for the purpose of an *in camera* review to determine whether the crime-fraud exception applied. The Court ruled that a district court may not order the production of documents for *in camera* review unless the party urging production has made the threshold showing "of a factual basis adequate to support a good faith belief by a reasonable person' that the crime-fraud exception applies." Id., at 572. Although the Court did not specify the level of proof necessary to trigger the crime-fraud exception, it suggested that a higher burden than that required for *in camera* review would be necessary to overcome the privilege. Zolin, 491 U.S. at 572. We believe that both of the standards enunciated by the district court meet this higher threshold. One requires that crime or fraud be "established," and the other requires that there be probable cause to believe that a crime or fraud had been perpetrated.

We reject the client's suggestion that fraud must be proved by clear and convincing evidence. Apart from the fact that it is not harmonious with the standards articulated by our sister circuits,[7] the standard is too exacting for proceedings at the

---

[7]The client contends that the "Tenth Circuit has indicated its agreement with a 'substantial and competent evidence' standard," citing Intervenor v. United States (In re Grand Jury Subpoenas), 144 F.3d 653 (10th Cir. 1998). This case does not assist

grand jury stage. The Supreme Court has cautioned that any rule that "would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws." United States v. Dionisio, 410 U.S. 1, 17 (1973); see also In re Grand Jury Investigation, 842 F.2d 1223, 1226 (11th Cir. 1987) ("If courts always had to hear testimony and conflicting evidence on such matters, the rationale behind the prima facie standard – the promotion of speed and simplicity at the grand jury stage – would be lost."). The grand jury is an investigative body; we do not believe that it would be prudent to "saddle" its proceedings with a clear and convincing evidence standard, which would unduly impede its investigation.

We turn next to the related question whether, in the grand jury context, the district court may be or is required to consider evidence presented in opposition to the application of the crime-fraud exception. We have suggested that in a civil case the party opposing the application of the crime-fraud exception is entitled to present countervailing evidence. In re General Motors Corp., 153 F.3d 714, 716 (8th Cir. 1998); see also UMG Recording, Inc. v. Bertelsmann AG (In re Napster, Inc. Copyright Litig.), 479 F.3d 1078, 1093 (9th Cir. 2007) (holding that a party has the right to present countervailing evidence in civil cases). Moreover, In re Murphy implies that consideration of contrary evidence may properly undermine the government's prima facie showing. 560 F.2d at 338 (noting that the government's evidence regarding one client, which was "ambiguous and controverted," was not "sufficiently convincing to support a *prima facie* case of fraud" and that the evidence pertaining to another client was infirm, in part, because evidence of the alleged crimes was found insufficient in two trials on the merits).

---

the client. Although the Tenth Circuit affirmed the district court, which used the "substantial and competent evidence" standard, the court gave no indication that a lesser burden would have been inappropriate. Id. at 660-61.

-11-

The "rules of the game" may be different in the grand jury context, however. In re Grand Jury Subpoena, 223 F.3d 213, 218 (3d Cir. 2000). As we noted earlier, grand jury proceedings should not be encumbered with procedures that would frustrate the efficient execution of its investigative purposes. In light of this concern, the Sixth Circuit concluded in In re Antitrust Grand Jury that "the district court did not err in considering only the evidence submitted by the government," 805 F.2d at 168, remarking that "[i]f the district court were required to weigh all conflicting evidence, it would be tantamount to a mini-trial, which the courts do not sanction at the grand jury stage." Id. at 167. The Tenth Circuit has observed that determining whether a crime has occurred is best determined "only in a trial on the merits," adding that "[t]he contest of a subpoena may not be converted into a preliminary trial." In re September 1975 Grand Jury Term, 532 F.2d 734, 737 (10th Cir. 1976). Moreover many of the formulations regarding the requisite quantum of proof set forth above imply that no contrary evidence should be considered. See In re Grand Jury Subpoena, 419 F.3d at 336 (whether the moving party's evidence is "such as will suffice until contradicted and overcome by other evidence" to establish crime or fraud (quotation omitted); In re Sealed Case, 107 F.3d at 50 (requiring evidence "that if believed by the trier of fact would establish the elements of an ongoing or imminent crime or fraud" (citation and quotation marks omitted)). But see Intervenor v. United States (In re Grand Jury Subpoenas), 144 F.3d 653, 663 (10th Cir. 1998) (noting that the district court "understood it had the authority to hear rebuttal evidence").

We need not decide today whether the district court may or should consider contrary evidence. Even if the district court could have (or should have) accorded the countervailing evidence some measure of consideration, we do not believe that consideration of the contrary evidence in this case would have properly affected the district court's crime-fraud determination. The client's rebuttal evidence appears to consist primarily of statements by the client and others that essentially convey the client's innocent explanations for his conduct. The assessment of credibility will typically be better left to the fact-finder, which may, in this case, later credit the

client's explanations. Nor should the district court's crime-fraud inquiry devolve into a mini-trial, with the district court engaging in a finely calibrated weighing of the evidence. Accordingly, even if it had been proper for the district court to accord the contrary evidence some measure of consideration (again, a matter we do not decide today), we do not believe that such consideration would extend to rejecting an otherwise sound prima facie case merely because the district court is more persuaded by the client's explanations.[8]

The client also argues that the crime-fraud exception is inapplicable because he had simply consulted his attorney in good faith about the legal implications of prior conduct. This argument fails. We review the district court's crime-fraud ruling for an abuse of discretion. In re Grand Jury Subpoenas Duces Tecum, 773 F.2d at 206. Considering the district court's familiarity with the record, which familiarity "should not be lightly regarded," we accord its determinations considerable deference. Id. The evidence indicates that the client had never sought advice regarding prior conduct because he had never told his attorney what that conduct was. Instead, the government has made a prima facie showing that the client lied about his prior conduct by providing a false back-story that became the basis of the attorney's legal advice.[9]

---

[8]We leave open the possibility that, in some circumstances, weighing contrary evidence or rejecting the government's evidence could be warranted. There may be cases, for example, where the government's evidence appears so facially unreliable (or the countervailing evidence so compelling) that a more critical gaze, perhaps informed by contrary evidence, may be appropriate. The client suggests, for example, that it would not be appropriate to assume that the government's evidence is true if that evidence consists of "testimony of a demonstrably incompetent, confused, or biased witness." That may well be true, but we need not reach that conclusion today because the government's evidence does not suffer from such deficiencies.

[9]The client cites In re BankAmerica Corp. Secs. Litig., 270 F.3d 639 (8th Cir. 2001), for the proposition that soliciting an attorney's advice in support of a "cover-up" will not trigger the crime-fraud exception. The client's reliance upon

-13-

The client also suggests that he did not solicit his attorney's assistance in committing a fraud and never suggested that any particular course of action be undertaken, but merely acquiesced in counsel's advice. As the government points out, however, it cannot be expected that a client seeking to enlist an attorney's (unknowing) aid in perpetrating a fraud will provide his attorney with precise legal directions for carrying it out. After all, the client is relying on the attorney's expertise. In this case, there is evidence that the client, in the face of allegations of wrongdoing, relayed to his attorney a false explanation for his conduct and that his attorney relied upon this false explanation in, *inter alia*, executing a legal response to the accusations. In other words, even if the client did not necessarily have any precise legal response in mind, the evidence indicates that he knowingly took advantage of his attorney's expertise in aid of his endeavor to mislead others with a false cover-story regarding his conduct. See In re Richard Roe, Inc., 68 F.3d at 40 (remarking that the crime-fraud exception applies when the client intends to use the attorney's services "to facilitate or to conceal the criminal activity"). In light of the foregoing, we can discern no abuse of discretion in the district court's crime-fraud determination.

The client contends, finally, that the subpoena should have been quashed in its entirety because the government is using the grand jury subpoena as a way of obtaining pre-trial discovery against him. The government may not use the grand

BankAmerica is misplaced. In that case, the client sought legal advice regarding its disclosure obligations under securities laws and then committed an unintentional disclosure violation by not disclosing certain losses it had sustained on some loans. We held that "the crime-fraud exception does not apply when a publicly held company seeks legal advice concerning its disclosure obligations and then commits an *unintentional* disclosure violation." 270 F.3d at 643. We added that the crime-fraud exception will apply if a client seeks "legal advice in furtherance of intentional securities law fraud." Id. In the present case, there is a prima facie case that the client sought the attorney's advice to perpetrate a fraud. It also bears mention that in BankAmerica, there was no "cover-up" of wrongdoing; the nondisclosure itself was the wrongdoing.

jury's investigative powers "for the sole or dominant purpose of preparing a pending indictment for trial." United States v. Puckett, 147 F.3d 765, 770 (8th Cir. 1998) (quotation omitted). If the grand jury proceedings are directed toward other charges or persons, "its scope cannot be narrowly circumscribed and any collateral fruits from bona fide inquiries may be utilized by the government." United States v. Wadlington, 233 F.3d 1067, 1074 (8th Cir. 2000) (quotation omitted). The government has represented to the district court and to us that the grand jury is investigating another party. The client contends that this assertion is belied by the fact that the subpoena seeks information pertaining to the client rather than another individual. Having reviewed the record, we conclude that this argument lacks merit.

The judgement is affirmed.

_____