**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-4096**

In Re:  GRAND JURY SUBPOENA

----------------------------------------------

UNDER SEAL 1; UNDER SEAL 2; UNDER SEAL 3,

Petitioners - Appellants,

and

UNDER SEAL 4,

Movant,

v.

UNITED STATES OF AMERICA,

Respondent – Appellee.

**No. 16-4099**

In Re:  GRAND JURY SUBPOENA

----------------------------------------------

UNDER SEAL 1; UNDER SEAL 2; UNDER SEAL 3,

Petitioners,

and

UNDER SEAL 4,

               Movant - Appellant,

      v.

UNITED STATES OF AMERICA,

               Respondent – Appellee.

———————————

Appeals from the United States District Court for the Western District of North Carolina, at Charlotte. Robert J. Conrad, Jr., District Judge. (3:15−mc−00005−RJC−DCK−1)

———————————

Argued: March 24, 2017               Decided: August 18, 2017

———————————

Before NIEMEYER, MOTZ, and DIAZ, Circuit Judges.

———————————

Affirmed in part, reversed in part, and remanded with instructions by published per curiam opinion. Judge Niemeyer wrote an opinion concurring in part and dissenting in part.

———————————

**ARGUED:** Joshua B. Carpenter, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina; Steven Thomas Meier, MEIER LAW, Charlotte, North Carolina, for Appellants. Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Ross Hall Richardson, Executive Director, Peter S. Adolf, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellants. Jill Westmoreland Rose, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

———————————

PER CURIAM:

This case arises from the district court's denial of a motion to quash grand jury subpoenas demanding testimony of a criminal defendant's attorney and investigator. As we explain, we find that part of the testimony sought is fact work product that may nonetheless be compelled because it falls under the crime-fraud exception to the work-product privilege. But the government may not ask a general question attempting to reach what we deem to be opinion work product. Accordingly, we affirm in part and reverse in part.

I.

We provide only a general recitation of the facts to preserve the confidentiality of the ongoing grand jury proceedings.

The United States obtained a conviction of a criminal defendant (the "Defendant") in the Western District of North Carolina. After trial, the government noticed that one of the exhibits introduced by the Defendant—a photocopy of a document—appeared to be a forgery. Upon request, the Defendant's attorney provided the United States with a better-quality copy of the exhibit. The better-quality copy appeared to confirm the government's suspicion but also raised new questions, and the United States requested interviews with the defense attorney and her investigator (collectively, the "Defense Team"). The Defense Team declined to be interviewed, and the Grand Jury then issued subpoenas compelling their testimony.

The Defense Team moved to quash the grand jury subpoenas, arguing that the government sought protected work product. The Defendant—represented by new

3

counsel—intervened in support of the Defense Team. In response to the Defense Team's motion to quash, the United States clarified that it planned to ask the Defense Team three questions: "(1) Who gave you the fraudulent documents? (2) How did they give them to you, specifically? (3) What did [a specific party under investigation] tell you?" J.A. 466. The district court held that the testimony sought constituted fact work product but that the United States had made a prima facie case that the crime-fraud exception applied such that the questions could be asked. The court thus denied the motion to quash.[1]

This appeal followed.

II.

Before us, the Defense Team and Defendant argue that the district court erred in finding that 1) the testimony sought by the government is fact—rather than opinion—work product and 2) the crime-fraud exception applies to compel discovery of the privileged communications.

We review a district court's ruling on privilege for abuse of discretion, "factual findings as to whether a privilege applies for clear error, and the application of legal principles de novo." *United States v. Hamilton*, 701 F.3d 404, 407 (4th Cir. 2012). The determination that the government has made a prima facie showing of crime or fraud

---

[1] A magistrate judge issued a 17-page opinion and order denying the Defense Team's motion to quash, which the district court affirmed and adopted.

4

sufficient to vitiate a claim of work product privilege "should be upheld absent a clear showing of abuse of discretion." *In re Grand Jury Proceedings #5 Empanelled January 28, 2004*, 401 F.3d 247, 254 (4th Cir. 2005) (internal quotation marks omitted). "A district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996).

## A.

The work-product privilege protects from discovery "an attorney's work done in preparation for litigation." *In re Grand Jury Proceedings #5*, 401 F.3d at 250. Because the privilege protects "not just the attorney-client relationship but the interests of attorneys to their own work product, the attorney, as well as the client, hold the privilege." *Id.* (internal citations omitted).

Not all work product is treated equally: We afford greater protection to opinion work product than to fact work product. Fact work product is a "transaction of the factual events involved" and may be obtained upon a mere "showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *In re Grand Jury Proceedings, John Doe*, 102 F.3d 748, 750 (4th Cir. 1996) (quoting *In re Grand Jury Proceedings, Thursday Special Grand Jury Sept. Term, 1991*, 33 F.3d 342, 348 (4th Cir. 1994)). Opinion work product, on the other hand, "represents the actual thoughts and impressions of the attorney," and it is "more scrupulously protected." *Id.* "[O]pinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *In re John Doe*,

662 F.2d 1073, 1080 (4th Cir. 1981) (quoting *In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977)).

A party seeking material that would usually qualify as work product may vitiate the privilege by showing that the material was "made for the purpose of committing or furthering a crime or fraud." *In re Grand Jury Subpoena*, 884 F.2d 124, 127 (4th Cir. 1989). The crime-fraud exception provides a separate avenue for compelling production of both fact and opinion work product, but here again opinion work product enjoys greater protection.

A party seeking to compel the production of opinion work product under the crime-fraud exception must demonstrate attorney knowledge of or participation in the client's crime or fraud, but no such showing is necessary to discover fact-work-product privileged materials related to a client's crime or fraud. *See In re Grand Jury Proceedings #5*, 401 F.3d 247 at 252–54; *Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir. 1999). Because the government does not claim that the Defense Team was aware of the Defendant's alleged crime or fraud, the reach of the grand jury's subpoena under the crime-fraud exception is limited to fact work product. The distinction between fact and opinion work product, therefore, bears on the outcome of this case.

B.

In *Upjohn Co. v. United States*, the Supreme Court developed a framework for analyzing the protection afforded an attorney's recollection of witness interviews, albeit without diving deeply into the distinction between fact and opinion work product. 449 U.S. 383, 400–01 (1981). The Court held that "memoranda based on oral statements of

6

witnesses [that] would reveal the attorney's mental processes . . . deserv[e] special protection" without creating stronger protections for *all* "work product which is based on oral statements from witnesses." *Id.* Key to the Court's holding, the "oral statements made by witnesses [were] presently in the form of the attorney's mental impressions [and] memoranda." *Id.* at 399 (quoting *Hickman v. Taylor*, 329 U.S. 495, 512 (1947)). And "notes and memoranda of witnesses' oral statements," the Court cautioned, "tend[] to reveal the attorney's mental processes," and therefore enjoy the greater protection accorded to opinion work product. *Id.*

But as *Hickman* itself cautioned, courts should tread carefully when a party seeks to compel disclosure of attorney work product, whether memorialized in writing or retained in the recesses of an attorney's mind. "Under ordinary conditions, [no legitimate purpose is served by] forcing an attorney to repeat or write out all that witnesses have told him," regardless of whether "oral statements made by witnesses [are] presently in the form of [the attorney's] mental impressions or memoranda." *Hickman*, 329 U.S. at 512–13.

In our view, *Upjohn* and *Hickman* make clear that a lawyer's recollection of a witness interview constitutes opinion work product entitled to heightened protections. It does not matter whether an attorney draws on her memories, as opposed to written notes, in recalling what was said; the opinion-work-product privilege offers increased protection to both sources because both require disclosure of the attorney's mental processes. *Upjohn*, 449 U.S. at 399–400 (explaining that "[f]orcing" disclosure of oral witness statements is particularly disfavored); *Hickman*, 329 U.S. at 513 (explaining the impropriety of

7

"forc[ing] the attorney to testify *as to what he remembers or what he saw fit to write down regarding witnesses' remarks*" (emphasis added)).

As Justice Jackson explained in *Hickman*, "Even if [an attorney's] recollection were perfect, the statement would be his language permeated with his inferences." 329 U.S. at 516–17 (Jackson, J., concurring). For most lawyers, imperfect recitations from memory of what a witness said would inevitably reveal what the attorney *deemed* important enough to remember. Accordingly, we draw a line between asking an attorney to divulge facts—either noticed by or communicated to her—and (as the government seeks to do here) asking an attorney to recall generally what was said in an interview. While it may be characterized as a "fact," the latter requires the attorney to expose her mental processes by revealing which witness statements she deemed important enough to commit to memory and is therefore opinion work product.[2]

## C.

*Upjohn* and *Hickman* mandate the conclusion that the government's proposed third question, which broadly demands, "What did [the witnesses] tell you?," seeks opinion work

---

[2] The Eighth Circuit reached this same conclusion in *In re Green Grand Jury Proceedings*, 492 F.3d 976 (8th Cir. 2007). There, like in the instant case, the United States suspected that a client had provided his attorney fraudulent documents. *Id.* at 978. The grand jury issued a subpoena demanding that the attorney testify about conversations with his client, and the attorney asserted the work-product privilege. *Id.* at 978–79. The court concluded that answers to "questions relating to the origins of documents" do not constitute recollections on par with notes and are therefore fact work product. *Id.* at 979. An attorney's "recollections of conversations," on the other hand, "would reveal the attorney's mental impressions and thought processes" and as such qualify as opinion work product. *Id.* at 982.

8

product. To answer this question, the Defense Team would have to disclose their recollections of witness statements and reveal what they deemed sufficiently important to remember from those discussions. This falls squarely within the category of work product—opinion work product—that the Supreme Court strongly shields from discovery. Indeed, the third question is functionally equivalent to the interrogatory the Court deemed improper in *Hickman*, which asked the attorney to "set forth in detail the exact provisions of any such oral statements or reports [from witnesses]." *Id.* at 499 (majority opinion). Such recollections of witnesses' statements "contain the fruit of [the attorney's] mental processes." *In re Grand Jury Proceedings # 5*, 401 F.3d at 250. That, of course, is opinion work product.

Our decision in *In re Grand Jury Proceedings, John Doe* does not compel a different result. There, the government sought to compel "testimony from [a bank's attorneys] as to what information was told to them by their client, the Bank, with respect to the date of" a note the Government believed the Bank improperly issued. 102 F.3d at 750. On appeal, the Bank's attorneys never asserted that the subpoenaed information was opinion work product. Rather, the parties briefed only whether the government demonstrated a prima facie case of crime or fraud sufficient to compel disclosure of fact work product. *See* Brief of Appellant, *In re Grand Jury Proceedings, John Doe*, 102 F.3d 748 (4th Cir. 1996) (No. 96-4609); Brief for the United States, *In re Grand Jury Proceedings, John Doe*, 102 F.3d 748 (4th Cir. 1996) (No. 96-4609); Reply Brief of Appellant, *In re Grand Jury Proceedings, John Doe*, 102 F.3d 748 (4th Cir. 1996) (No. 96-4609).

Thus, in describing the facts of the case, we noted that the government sought "testimony from the attorneys as to what information was told to them by their client," which was a "transaction of the factual events involved" and therefore fact work product. *In re Grand Jury Proceedings, John Doe*, 102 F.3d at 750. But because the Bank's attorneys in *John Doe* never asserted that the Government sought opinion work product, our undisputed characterization of what was at issue there was no holding at all. *See e.g. United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) (stating that a prior case "is not a binding precedent" for questions "not . . . raised in briefs or argument nor discussed in the opinion of the Court."); *accord Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").[3]

Put simply, *In re Grand Jury Proceedings, John Doe* did not decide the question at issue here.

### D.

Because the government's third question seeks opinion work product, and because the government does not assert that the Defense Team was aware of the alleged crime or

---

[3] In any event, courts of appeals cannot overrule Supreme Court precedents.

fraud, it may not rely on the crime-fraud exception to compel the Defense Team to answer the third question.

Questions one and two, on the other hand, target fact work product,[4] which the government also seeks pursuant to the crime-fraud exception. The party asserting the exception (here, the United States) "must make a prima facie showing that the privileged communications fall within the exception." *Chaudhry*, 174 F.3d at 403. This showing has two prongs, that: "(1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme and (2) the documents containing [the privileged materials] . . . bear a close relationship to the client's existing or future scheme to commit a crime or fraud." *Id.* (alterations in original) (internal citations omitted). We will uphold the district court's determination that the government has made a prima facie showing of crime or fraud "absent a clear showing of abuse of discretion." *In re Grand Jury Proceedings #5*, 401 F.3d at 254 (quoting *In re Grand Jury Subpoena*, 884 F.2d at 127).

As we've noted, "those seeking to overcome the *opinion* work product privilege must make a prima facie showing that the attorney in question was aware of or a knowing participant in the criminal conduct." *Id*. at 252 (emphasis added) (internal quotation marks omitted). But to compel the Defense Team to answer questions one and two, it's not

---

[4] At oral argument, the Defense Team conceded—properly, we find—that "questions one and two are fact work product." Oral Argument at 9:48 to 10:02.

necessary for the United States to show that the Defense Team was aware of their client's alleged bad acts.

The Defense Team doesn't argue that the district court erred in finding that the government satisfied the two prongs of the crime-fraud exception's prima facie showing. Appellants' Br. at 12–13. Instead, they contend that, because the district court correctly found that "the Government has made no assertion that [the Defense Team] had knowledge of or knowingly participated in [their client's] crime," the United States hasn't satisfied the third prong of the crime-fraud exception. *Id.* at 13 (quoting J.A. 466). But that third prong—as the Defense Team appears to admit—need not be satisfied where a party seeks only fact work product. The district court's order here cites—and perfectly tracks—our precedent laying out the correct two-prong test for the crime-fraud exception to fact-work-product privilege.

We are thus left to review the district court's "factual findings as to whether a privilege applies for clear error." *Hamilton*, 701 F.3d at 407. The United States provided ample evidence that the Defendant likely engaged in "perjury and production of a fraudulent document" and that the proposed questions seek information "bear[ing] a close relationship to [that] possible criminal and fraudulent activity"—specifically, the identity

12

of the source of those documents.  J.A. 476–77.  The district court did not clearly err in concluding that the government made a prima facie showing of crime or fraud.[5]

We therefore affirm in part the district court's order denying the motion to quash the grand jury subpoenas.  Specifically, the government may ask the Defense Team:  (1) Who gave you the fraudulent documents? and (2) How did they give them to you, specifically?  We reverse, however, that portion of the district court's order compelling the defense team to answer the government's third question and remand with instructions that the district court grant that portion of the motion to quash.

*AFFIRMED IN PART, REVERSED IN PART,*
*AND REMANDED WITH INSTRUCTIONS*

---

[5] Because the first and second questions seek information *exempted* from the work-product privilege because of crime or fraud, we do not reach the Defense Team's argument that the government failed to demonstrate the substantial need necessary to discover privileged fact work product.

NIEMEYER, Circuit Judge, concurring in part and dissenting in part:

The question we must answer is whether a grand jury subpoena directing an attorney to testify as to what some third-party witness told her violates the work-product rule in circumstances implicating the crime-fraud exception. Specifically, the dispute here centers on whether a grand jury subpoena can require members of a criminal defense team to testify as to what a third-party witness told them when providing them with a fraudulent document, nothing more.

The district court reasoned that this evidence, although part of the attorney's work product, amounted only to historical fact that did not involve the attorney's mental impressions or opinions. The court therefore concluded that because the inquiry was justified by the crime-fraud exception, the evidence could be obtained. I agree. Asking an attorney to recall what a witness told her about a specific document reveals at most a *de minimis* amount of attorney impression — namely, that the attorney presently believes she can remember a witness's words.

The work-product rule protects matters prepared in anticipation of litigation. In the seminal case of *Hickman v. Taylor*, 329 U.S. 495 (1947), the Supreme Court held that an attorney's work product was entitled to a qualified privilege from discovery under the Federal Rules of Civil Procedure. In doing so, the Court explained the policy behind protecting attorney work product:

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case

14

demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.

*Id.* at 510–11. But the Court also made clear that there was a competing policy underlying the adversary system — the principle that both sides should have access to all the facts in a case, including, if necessary, those in the hands of opposing attorneys. The Court stated:

We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. . . . *Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.* To that end, either party may compel the other to disgorge whatever facts he has in his possession.

*Id.* at 507 (emphasis added).

The difficult issues arise where the facts sought are intertwined with an attorney's assessment and preparation of those facts for use in litigation. The cases have toiled over defining the circumstances when such facts can be or should be produced. *Hickman* itself indicated that an exception to the work-product rule exists where facts are available only from the hands of an opposing attorney and where necessity and justice require their production. *See* 329 U.S. at 509, 511–12. That Court, however, denied production of such facts in the case before it — including, as relevant here, oral statements of witnesses made to the defendant's attorney — because the party seeking the information had not made a sufficient showing to justify the exception. Indeed, the plaintiff's attorney had made *no* showing, arguing only that the evidence would help him prepare for his own examination of the witnesses and assure him "that he ha[d] overlooked nothing." *Id.* at 513. Specifically, as to the witnesses' oral statements made to the attorney, whether in the form

15

of the attorney's memory or documented memoranda, the Court stated, "we do not believe that any showing of necessity can be made *under the circumstances of this case* so as to justify production." *Id.* at 512 (emphasis added). But even as to such matters, the Court indicated that they might be producible in "rare situation[s]." *Id.* at 513.

In the years since *Hickman*, courts have distinguished between "opinion work product" and "fact work product" when assessing the nature of the showing necessary to justify production of attorney work product. To serve the policy of discovery of facts, a court will more likely favor the production of fact work product, whereas to serve the policy of protecting attorneys' mental processes during preparation for litigation, a court will more likely protect from production impressions, conclusions, opinions, or legal theories of the attorneys or their agents. This demarcation was defined more clearly in *Upjohn Co. v. United States*, 449 U.S. 383 (1981), where the Court stated that "[f]orcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes, [*i.e.*,] '*what he saw fit to write down* regarding witnesses' remarks,'" *id.* at 399 (emphasis added) (quoting *Hickman*, 329 U.S. at 513). This formulation suggests that requiring an attorney to disclose facts contained in his work product is not so disfavored when doing so does not reveal the attorney's mental processes. Distilling these principles, we have held that while both types of work product are potentially discoverable, we afford greater protection to "opinion work product" than to "fact work product." *See, e.g.*, *In re Grand Jury Proceedings #5*, 401 F.3d 247, 252 (4th Cir. 2005) ("[F]act work product enjoys less protection than opinion work product"); *In re Grand Jury Proceedings*, 102 F.3d 748, 750 (4th Cir. 1996) ("Opinion

16

work-product . . . is more scrupulously protected as it represents the actual thoughts and impressions of the attorney" (internal quotation marks and citation omitted)).

In this case, I believe that *Hickman* and its progeny favor disclosure of what are historical facts. The grand jury simply seeks the testimony of an attorney as to what a witness told her about a specific document. Under these circumstances, the government will not obtain the attorney's impressions about the witness's statement or require the attorney to evaluate it in any respect — indeed, the attorney could be expressly instructed to omit any impressions from her responses.

The majority's contrary conclusion rests on the premise that asking an attorney to recall what a third-party witness told her about a specific document would force the disclosure of opinion work product because it "would inevitably reveal what the attorney *deemed* important enough to remember," thereby offering a window into the attorney's mental processes. *Ante* at 8. Yet, this underlying premise regarding the nature of memory is shaky. Perhaps the attorney remembers what the witness told her about the document because she found it significant to her client's defense. Or maybe she remembers the statement because the witness made a joke or was wearing an interesting shirt or used a strange turn of phrase. Or maybe the attorney simply has a good memory and is able to relate accurately what was told to her. The grand jury will never know. There thus remains an important difference between an attorney's present memory of a witness's statement and her contemporaneous notes and memoranda of a witness's statement, which are written specifically *to document the portions* of the statement that she considered relevant to her

17

client's case — *i.e.*, what she "saw fit to write down." *Upjohn*, 449 U.S. at 399–400. Only the latter provides a window into the attorney's thought process.

At bottom, the subpoenaed testimony "seeks only [a] transaction of the factual events involved," *In re Grand Jury Proceedings*, 102 F.3d at 750, namely, what a third-party witness said about a fraudulent document that the witness was providing to the attorney. This is far removed from true opinion work product, which rightfully "enjoys a nearly absolute immunity." *In re Grand Jury Proceedings*, 33 F.3d 342, 348 (4th Cir. 1994). Because we all agree that the government's showing as to the applicability of the crime-fraud exception in this case justifies the production of fact work product, I would apply the exception and allow the grand jury to obtain the attorney's testimony *on the limited question of what the attorney was told by a witness about a specific document*, as best the attorney can recollect. Accordingly, I would affirm the district court's order in full.